337 P.2d 281

**ARIZONA STATE TAX COMMISSION,**
Appellant,

v.

**STAGGS REALTY CORPORATION, a**
corporation, Appellee.

No. 6687.

Supreme Court of Arizona.
March 25, 1959.

Wade Church, present Atty. Gen., and
Stanley Z. Goodfarb, Asst. Atty. Gen., Rob-

ert Morrison, former Atty. Gen., and Robert G. Mooreman, formerly Sp. Asst. Atty. Gen., on briefs, for appellants.

Paul W. LaPrade, Whitney & LaPrade, Phoenix, for appellee.

BERNSTEIN, Justice.

This is an appeal by the Arizona State Tax Commission from a judgment entered for appellee in its suit for refund of taxes paid under protest. The matter was submitted to the trial court upon stipulated facts, including the testimony of one witness upon deposition, pursuant to appellee's motion for summary judgment. In substance, the question presented is like that heard in Moore v. Smotkin, 79 Ariz. 77, 283 P.2d 1029, on rehearing, 79 Ariz. 401, 291 P.2d 216, pertaining to the reach of the Excise Revenue Act of 1935, as amended, as it applies to the business of "contracting", A.R.S. Section 42–1310, in this case for a period subsequent to December 1, 1953.

The agreed facts are that appellee is a corporation engaged in planning and selling what are known as "Staggs-Bilt" homes on tracts provided therefor. It purchases acreage and subdivides it by filing a map and plat of the land, setting forth easements, dedicated streets and the division into lots; improves the property by putting in paving, curbs, and, where required, sewer and water mains; plans the homes to be constructed on the lots; contracts for the construction of the homes; obtains mortgage financing for the project, acting itself as the mortgagor; and effects sales of the home and lot units to the public. Some of the units are sold after the homes are built and some are sold pursuant to contracts to purchase entered into before the homes are built. All such sales contracts include a provision like the following:

"House to be built according to model house floor plan ———, and built according to plans and specifications on file with FHA."

As noted, appellee does not itself build the houses it sells. Instead, the houses are built for appellee by Staggs Construction Company pursuant to a basic contract therefor, stipulating the price of each type of house to be constructed. Staggs Construction Company, in turn, subcontracts the building work to others. Although the sole stockholders of both companies are Ralph E. Staggs and his wife, Patricia Jean Staggs, who also are, respectively, president and vice president-secretary of both companies, appellant did not contend below, and does not argue here, that the corporations should be treated as a single unit, and their affiliation, therefore, will be disregarded in our consideration of the matter.

The taxing statute provides for "annual privilege taxes measured by the amount or volume of business transacted", A.R.S.

Section 42–1309, and specifies the businesses covered and applicable rates as follows (A.R.S. Section 42–1310):

> "The tax imposed by subsection A of § 42–1309 shall be levied and collected at the following rates:
>
> \*   \*   \*   \*   \*   \*
>
> "2. At an amount equal to one per cent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this State in the following businesses:
>
> \*   \*   \*   \*   \*   \*
>
> "(i) Contracting, but payments paid by the contractor for labor employed in construction, improvements or repairs shall not be subject to such tax."

In Moore v. Smotkin we held that a builder who built on his own property for speculative sale, even though some sales contracts subject to acceptance of the property by the purchaser were made prior to the completion of the houses, was not a "contractor" within the meaning of the annual privilege tax. That tax, we said, applies only to a person who first contracts with others to do construction work for them.

Appellee relies on Moore v. Smotkin in contending that under the quoted statute, only Staggs Construction Company is a "contractor" engaged in the business of "contracting", and that the tax paid by the Construction Company, measured by its gross proceeds or income, is all that is due.

Appellant contends that the definition of the words "contractor" and "contracting" determined in Moore v. Smotkin is not applicable to the tax period here involved, since another tax provision dealing with exemptions, A.R.S. Section 42–1321, subd. A, par. 3, was amended in 1952 (Laws of 1952, Chapter 100, Section 1, amending Section 73–1329, A.C.A.1939) to exempt from the privilege tax:

> "Sales of tangible personal property to a person licensed as a contractor under chapter 10 of Title 32 who holds a valid privilege tax license for engaging or continuing in the business of contracting under this article when the tangible personal property so sold is incorporated or fabricated by the contractor into any structure, project, development or improvement in fulfillment of a contract therefor."

The licensing statute referred to in the quoted exemption provision, in turn, requires a license to engage in the business of "contractor", and, at least since 1933 (compare Laws of 1931, Chapter 102, Section 3, defining a contractor as a person who "undertakes *with another*" building construction, with Laws of 1933, Chapter 104, Section 3, deleting the words "with another"), has contained a broader definition

of "contractor" than that contained in the taxing statute as interpreted in Moore v. Smotkin. The present licensing definition, contained in A.R.S. Section 32–1101, substantially the same as that enacted in 1951, Laws of 1951, Chapter 55, Section 1, is as follows:

"Within this chapter, 'contractor' means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, *or does himself or by or through others,* construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith. The term contractor includes subcontractors and specialty contractors."

(Emphasis supplied.)

The cross reference in the tax exemption provision to the licensing statute, it is argued, shows that the two statutes are *in pari materia,* wherefore the privilege tax now must be paid by all who are "contractors" under the licensing statute.

We do not believe that the change in the burden of taxation for which appellant contends can be sustained.

First, it is especially important in tax cases to begin with the words of the operative statute. We have repeatedly said that such words will be read to gain their fair meaning, but not to gather new objects of taxation by strained construction or implication. Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363; Corporation Commission v. Equitable Life Assur. Soc. of United States, 73 Ariz. 171, 239 P.2d 360; State Tax Commission v. Miami Copper Co., 74 Ariz. 234, 246 P.2d 871; Moore v. Smotkin, supra; State Tax Commission v. Wallapai Brick and Clay Products, Inc., 85 Ariz. 23, 330 P.2d 988. "Matters or persons upon whom [tax] burdens are placed should be pointed out with reasonable clarity and not left to the realm of speculation." Alvord v. State Tax Commission, supra, 69 Ariz. at page 291, 213 P.2d at page 366. Here, the words of the taxing statute have not been altered in substance since the decision in Moore v. Smotkin. At best, then, appellant asks us to attribute a different meaning to the statute by an implication which, to say the least, is not readily apparent from a reading of the statute itself, a course which our decisions insist should be viewed with disfavor.

Second, turning to the source of the implication contended for, we recognize that the various provisions of our taxing stat-

utes are to be read together and ordinarily construed as a whole. Accordingly, if there were a definition of general applicability set forth in one provision, it would be given weight as indicating the appropriate definition of the same word or phrase in another provision. The 1952 amendment exempting sales to a "contractor", however, provides no definition of general applicability. Instead, by exempting sales to a contractor who is *both* (i) "licensed" under chapter 10 of Title 32 and (ii) a holder of "a valid privilege tax license", the amendment can be read to exhibit an awareness that not all contractors licensed under the licensing statute are subject to pay the contractor's privilege license tax. The history of the amendment is that it was enacted after the decision of this court in Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 171 A.L.R. 684, in 1947, holding that a materialman's sale of a building material to a contractor was not a sale for resale and therefore was not tax exempt. So far as appears, the amendment was addressed to the narrow problem of the Duhame case, and there is no suggestion of a broader purpose involving any other provision of the statute.

Third, appellant's main line of argument, as previously noted, is that the licensing statute is *in pari materia*, or closely allied, with the taxing act, an argument gathering strength from the reference to the licensing act in the 1952 exemption amendment, wherefore the definition of "contractor" in the licensing statute should be read into the taxing act. The short answer to that argument is that the two acts have entirely different objectives and treat of two different subjects of legislative concern: one is a statute to regulate the business of contracting in exercise of the state's police powers; the other is a law to collect revenues pursuant to the state's taxing powers. That the reach of the taxing act does not turn on the scope of the licensing statute was explicitly stated in Moore v. Smotkin, see 79 Ariz. at page 79, 283 P.2d at page 1030, and no amendment to either statute has altered the logic of their relationship.

Fourth, if required to sustain appellant's position, we are asked to reexamine the Smotkin decision, and the closeness of the question gives the invitation some appeal. But we are here dealing with a statutory interpretation of sufficient consequence also to invite the attention of the legislature. If the legislature had desired to reverse the Smotkin ruling, it knew how. Compare the change in the licensing statute enacted in Laws of 1951, Chapter 55, contained in Section 67–2301, A.C.A.1939; S.B. 78, as originally introduced, 23d Legis. 2d Reg. Sess., 1958, c. 40. At this point in the history of the matter, we think there is no occasion for judicial reexamination.

Finally, we come to the crucial question of whether Moore v. Smotkin can be dis-

tinguished on the record before us. The only factual distinction of note relates to the nature of the contracts made by Smotkin and those made by appellee with the purchasers of their houses not yet completed. We noted in the Smotkin case that his contracts contained no promise to build a house and that each transaction was subject to the condition that the transfer of property be accepted by the prospective purchaser. Here, the contracts do refer to the house to be built on the property and there is no doubt that the agreement of purchase binds the purchaser as well as appellee. That distinction, we believe, is not one which should determine a different result. Keeping in mind that appellant seeks imposition of the tax on all appellee's sales proceeds, the dominant fact of comparison is that both Smotkin and appellee were speculative builders of tract houses (appellee contracting with an affiliated company to have the affiliate perform the home construction), both building to their own design on their own property in accordance with an overall production plan of their own making, and both selling or promising to sell lot and house units. That some contracts for the sale of such units were entered into prior to the building of the houses realistically is but an incident in the larger scheme described. The "business" of the two firms was the same, and we see no reason for creating an artificial distinction compounding the difficulties already present in fairly administering the tax statute at hand.

The judgment is affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL, and JOHNSON, JJ., concurring.