430 P.2d 434

Milton G. PACE, dba Invest-A-Homes, Appellant,

v.

Harry E. HANSON and Shirley A. Hanson, his wife, Appellees.

No. I CA–CIV 421.

Court of Appeals of Arizona.

July 20, 1967.

Rehearing Denied Sept. 19, 1967.
Review Denied Oct. 24, 1967.

Skousen, McLaws & Skousen, by John Larry McLaws, Mesa, for appellant.

L. Dennis Marlowe, Tempe, for appellees.

MOLLOY, Judge.

This is an appeal from a summary judgment declaring null and void a note and realty mortgage given by the plaintiffs, husband and wife, to the defendant in exchange for a commitment by the defendant to provide to the plaintiffs a "shell house"[1] to be delivered by the defendant on a lot owned by the plaintiffs. The de-

fendant is not licensed as a contractor and the decision below is predicated upon the conclusion that the contract between the parties was illegal in that it violated our statutes regulating the business of contracting. A.R.S. § 32–1101 et seq.

Pertinent facts are revealed by a transcript of the testimony taken at a hearing on a petition for a preliminary injunction to restrain the defendant from negotiating the subject promissory note. The testimony of the defendant at this hearing[2] establishes that at the times concerned he was engaged in the business of selling lumber and other building materials in the City of Phoenix, Arizona. At his place of business, the defendant had a model shell house of the type to be furnished to the plaintiffs. After preliminary negotiations, the defendant entered into a written contract with the plaintiffs to sell to them " * * * a house, according to the plans and specifications on the sheet attached hereto, which is by reference made a part hereof, delivered on the property of the owner * * *." Attached to the agreement was a sheet designated "Exhibit Page A-B-C" which indicated that the house was to be 26 x 40 feet in size, that "transportation" was included in the contract as well as the material for the foundation for the house, so long as such material did not exceed $350. The exhibit indicated that the owner was to construct the foundation himself, that a "single floor" and exterior doors only were included, but that other standard optional items such as interior trim, insulation, carport, garage, shutters, plumbing, electric wiring, air-conditioning, and porch were not included. The defendant testified that the house sold was to be "prefabricated" at the location of his business

---

1. The defendant described a "shell house" as follows:

    "A shell house is a house that is finished on the outside with the interior left completely unfinished, for a customer to do as he likes with it."

2. That it is proper to consider testimony at such a hearing on motion for summary

judgment, see 6 Moore's Federal Practice ¶ 56.11 [1]8, at 2060–61 (1953) ; 3 Barron and Holtzoff, Federal Practice and Procedure, § 1236, at 161 (1958); Fletcher v. Bryan, 175 F.2d 716 (4th Cir. 1949).

and taken to the plaintiffs' lot, where it would be installed by the buyers.

In connection with this contract, the defendant had the plaintiffs execute a "loan application" wherein they gave job information and indicated that their ownership of the lot upon which the house was to be constructed had no encumbrances. The price expressed in the "sales agreement" was $4400, to be paid by a note in this same amount, secured by a realty mortgage upon the lot to be improved. On August 19, 1964, the plaintiffs executed and delivered to the defendant the note and mortgage described in this contract and it was this note and mortgage that were canceled by the judgment below, in a judgment which also denied a counterclaim to foreclose the note and mortgage.

The defendant paid for the required building permit and for the materials for the foundation to be constructed by the plaintiffs out of the "loan proceeds." On or about October 10, 1964, a conversation occurred between the parties which was summarized in the testimony of the defendant as follows:

"Harry Hanson [plaintiff] informed me that he had completed the construction of his foundation and that he was ready for the material for the completion of his shell house.

"He also stated that he didn't believe that he was able to fabricate this house, and I stated to him that it was *fabricated in sections,* and it was a matter of him completing them in place.

"He stated that he preferred them to be built or fabricated and placed at his location, and I stated to him that this could be arranged—I could obtain the men that was familiar with—fabricated this model house, and that it could be accomplished with his permission, and which was given, and that is the substance of it." (Emphasis added)

The defendant testified that he entered into a contract with two men, "* * * fabricators of houses * * * on a con-

tract basis." These fabricators were paid out of the defendant's personal checking account, with the expenditures being charged to the "* * * loan proceeds." That the cost of this work was to come out of the $4400 overall contract with the plaintiffs is indicated by the following testimony of the defendant:

"Q Did you procure them, did you talk to these people and secure them to do this contract work?

"A Yes, I talked to them.

"Q And you were being paid for it, you had the overall contract with Mr. Hanson, is that correct?

"A I had a contract to sell him the material for the house *and services."* (Emphasis added)

The plaintiffs' testimony was to the effect that the defendant had agreed to provide an assembled shell house upon the plaintiffs' lot, and to pay for the cost of the material for the foundation and the building permit. According to the plaintiffs, under the original contract, the house was to be "prefabricated" at the defendant's place of business and this contract was later orally modified so that the house was completely constructed on the foundation constructed by the plaintiffs. The testimony presented by the plaintiffs at the preliminary hearing indicated that both the quality of the materials and workmanship was unmerchantable.

There was a dispute in the evidence as to whether the plaintiffs or the defendant supervised the work of the "fabricators" secured by the defendant. Plaintiffs testified that they had no control whatsoever over these persons; while the defendant testified that he did not oversee the work of these fabricators and that they were "self-employed." The defendant further testified however:

"Q Did you tell those men at any time what to do up there?

"A No.

"Q Who did tell them?

"A Mr. Hanson."

In his opposition to the motion for summary judgment filed below, the defendant stated:

"Defendant further concedes that he entered into an agreement to sell a 'shell house' to the plaintiffs and did proceed to construct same. However, it is defendant's position that the promissory note and realty mortgage which was delivered by the plaintiffs to the defendant was a transaction incidentally and collaterally related to the construction contract of August 14, 1964."

In his affidavit attached to his opposition to the motion for summary judgment, the defendant stated:

"That the materials used in said 'shell house' and the *labor required to erect* same *were fully furnished* and said 'shell house' was erected and constructed to substantial completion and as a result thereof, *the construction contract* was consummated and further, the monies as represented in the promissory note of August 14, 1964 were furnished for the benefit of the plaintiffs." (Emphasis added)

■ Judgment having been rendered below on a motion for summary judgment, all differences between the sworn testimony of the plaintiffs and that of the defendant must be resolved at this juncture in favor of the defendant. Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361, 368 P.2d 317 (1962).

■ Initially, we cannot agree with the defendant's contention that the note and mortgage given in exchange for this "construction contract" are only collaterally related thereto. The note and mortgage promised were the only consideration for the defendant's contract. No monies were to be paid to the plaintiffs by the defendant. Calling this transaction a "loan" would be to circumvent a statute designed for the protection of the contractee. That the promise to pay is put in solemn form in a promissory note, and secured by a realty mortgage, does not relieve defendant from the requirements of obtaining a contractor's license. 10 C.J.S. Bills and Notes § 154, at 628–629, 11 Am.Jur.2d Bills and Notes § 267, at 294–95; and see Benson v. Andrews, 166 Cal.App.2d 44, 332 P. 2d 698 (1958).

■ The sworn testimony of the respective parties leaves the exact contractual obligations in some doubt, but we believe the variances are not critical to the outcome. Whether the defendant was to construct this house in sections and then deliver it to the plaintiffs' property to be there assembled by plaintiffs, or whether an entire shell house was to be constructed by the defendant and transported as a unit to the plaintiffs' property, or whether the house was to be constructed in sections by the defendant and then assembled by "self-employed" fabricators under a subcontract by which the fabricators were to receive part of the $4400 "purchase price," we believe is immaterial.

A.R.S. § 32–1101 defines a "contractor" in this language:

"Within this chapter, 'contractor' means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, *construct,* alter, repair, add to, subtract from, improve, *move,* wreck or demolish *any building,* highway, road, railroad, excavation or other structure, project, development or improvement, or *to do any part thereof,* including the erection of scaffolding or other structure or works in connection therewith. The term contractor includes subcontractors and specialty contractors." (Emphasis added)

This is a most encompassing definition and its semantics clearly includes the defendant's situation. We look to the legislative history to ascertain whether the ap-

parent intent is the actual intent. In the 1939 Revised Code, the definition of a contractor read as follows:

"67-803. Contractor defined.—

"A contractor within the meaning of this act is a person, firm, copartnership, corporation, association, or other organization, or any combination of any thereof, who for either a fixed sum, price, fee, percentage, or other compensation other than wages, undertakes or offers to undertake or purports to have the capacity to undertake to construct, alter, repair, add to or improve any building, highway, road, railroad, excavation, other structure, project, development or improvement, *other than to personalty*, or any part thereof; provided, that the term contractor, as used in this act, shall include sub-contractor, *but shall not include anyone who merely furnishes materials or supplies without fabricating the same into, or consuming the same in the performance of the work of the contractor as herein defined.* [Laws 1931, ch. 102, § 3, p. 284; 1933, ch. 104, § 3, p. 525.]" (Emphasis added)

Under the 1939 language, there is room for the defendant to argue that he is excluded, as one "* * * who merely furnishes materials or supplies without fabricating the same into, or consuming the same in the performance of the work of the contractor as herein defined." In California, where a similar exemption from the definition of a contractor has been retained, West's Ann.Bus. & Prof.Code, § 7052, a claim of exemption has been upheld as to a builder of custom-made cabinets. Steinbrenner v. J. A. Waterbury Construction Co., 212 Cal.App.2d 661, 28 Cal.Rptr. 204 (1963).

But the language of Arizona's code was changed, not by a revisor, but by statute adopted in 1951, ch. 55, Laws of Arizona 1951. By this amendment, the substance of all of the language underlined in the above quote of section 67-803, Revised Code of 1939, was eliminated from the definition of a contractor. When the legislature changes the statutory language in such substance as this, it is presumed that the legislature intended to make a change in existing law. Trump v. Badet, 84 Ariz. 319, 327 P.2d 1001 (1958). We believe the 1951 amendment clearly evinces the intent of the legislature that a contractor should not be limited to one who works solely on real property; instead, we see the legislature recognizing that one who undertakes to construct, alter, et cetera, "any building," although personalty, is a contractor. Perhaps it may be argued that the word "building" should not be given its broadest definition,[3] but certainly a "building" which is to be used as a residence and fixed to a concrete foundation is within the legislative intent of the word as used here.

The verbiage in the old definition of a "contractor" exempting the supplier who does not fabricate his materials into the work of the contractor is now found, in different form, in A.R.S. § 32-1102, which provides that the "* * * contracting business shall *include* * * *" (emphasis added) three classifications, the general building contractor, the general engineering contractor, and the specialty contractor. In the definition of a "general building contractor," we find a variation of the old exemption:

"A general building contractor is a contractor whose principal contracting business is in connection with any structure built, being built, or to be built for the support, shelter and enclosure of persons, animals, chattels or moveable property of any kind requiring in its

---

3. The word building has been defined as "Act of making, erecting, or establishing. That which is built: specif.: As now generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose." Webster's New International Dictionary (2d ed. 1946), p. 351.

construction the use of more than two unrelated building trades or crafts or to do or superintend the whole or any part thereof, *but does not include a person who merely furnishes materials or supplies as provided in § 31–1121 without fabricating them into or consuming them in performing the work of the general building contractor."* (Emphasis added)

The italicized exception, which we note is contained only in a nonexclusive list of classifications of contractors, is limited by its terms to those providing materials "* * * as provided in A.R.S. § 32–1121 * * *." Insofar as materialmen are concerned, A.R.S. § 32–1121 exempts only suppliers of materials to the extent that the materials supplied constitute:

> "The sale or installation of finished products, materials, or articles of merchandise *which are not actually fabricated into and do not become a permanent fixed part of the structure."* (Emphasis added) A.R.S. § 32–1121, subsec. 5.

Under similar language, California has exempted the prefabricator of a cold-storage plant, Costello v. Campbell, 81 Cal. App.2d 452, 184 P.2d 315 (1947), and prefabricated steel wall cabinets, dishwasher and sink assembly with garbage disposal unit, E. A. Davis & Co. v. Richards, 120 Cal.App.2d 237, 260 P.2d 805 (1953). But clearly prefabricated sections of a house itself cannot be reasonably fitted into this exemption.

We should note other differences between our Arizona statutes and existing California law. In California, § 7045, West's Ann.Bus. & Prof.Code, exempts from the contractors' licensing chapter:

> "* * * a materialman or manufacturer furnishing finished products, materials, or articles of merchandise who does not install such items."

Moreover, the California code still retains the exemption as to "personalty" (West's Ann.Bus. & Prof.Code § 7046). The decisive differences between the language of the California versus Arizona code are too substantial to be taken to be accidental.

We see as much service to public policy in applying the provisions of the contractors' licensing law in this case as in any other. Whether a house is prefabricated or constructed on site, we cannot see that there is any great difference for the need for skill and reliability on the part of the builder. The testimony before us here as to the unsatisfactory nature of the work provided lends support to this thesis.

We hold that recovery by the defendant here on the promissory note in question would be a violation of the express mandate of our law that an unlicensed contractor may not recover for his work. A.R.S. § 32–1153. That the result reached here may seem harsh, we believe is answered by language of our Supreme Court:

> "However, the statute requiring a contractor to possess a contractor's license before he may recover for work done was designed for the protection of the public and must not be defeated in order to accommodate one who has violated the provisions of the statute. Permitting an unlicensed contractor to recover on the ground that a loss would result to him otherwise would completely nullify the statute since every unlicensed contractor would sustain a loss or forfeiture unless he were allowed recovery. The remedy, if any, lies with the legislature. As the law stands, the court cannot countenance such a result." Northen v. Elledge, 72 Ariz. 166, 173, 232 P.2d 111, 116 (1951).

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.