446 P.2d 699

Fern MILLER, Petitioner,

v.

The SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF PIMA, and the Hon. John P. Collins, Judge; and George GENEMATAS and Patricia Genematas, husband and wife, and Robert Burroughs and Patricia Burroughs, husband and wife, real parties in interest, Respondents.

No. 2 CA–CIV 590.

Court of Appeals of Arizona.

Nov. 7, 1968.

Odgers & Barker, by J. Emery Barker, Tucson, for petitioner.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by D. Thompson Slutes, Tucson, for respondents.

KRUCKER, Judge.

We are called upon to review by certiorari the trial court's refusal to dismiss a complaint filed against the petitioner in a suit to recover an alleged balance due under a contract. In order to pass upon the correctness of the ruling complained of, we must resolve the following question: Is a subdivider-owner of real property who hires a licensed contractor to construct dwellings in a subdivision owned by him and who contracts with members of the general public for the sale of such dwellings required to be licensed as a contractor?

The pertinent facts are as follows. The real parties in interest, Genematas and Burroughs, commenced an action to recover the alleged balance due from petitioner on a written contract. The petitioner filed a motion to dismiss, pursuant to Rule 12(b) 6, Arizona Rules of Civil Procedure, 16 A.R.S., and attached thereto a copy of the said contract and an affidavit of petitioner's attorney which stated that George Genematas[1] was not a licensed contractor

within the purview of Title 32, Ch. 10, A.R.S. The plaintiffs in opposition to the motion to dismiss, submitted an affidavit which stated that the construction in question was performed by one James Frazier, a licensed contractor. (Frazier was not a party to the contract.)

Petitioner's position in the trial court and here is that the plaintiffs were precluded from maintaining the action by A.R.S. § 32–1153 which provides:

"No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation *for the performance of any act for which a license is required by this chapter* without alleging and proving that he was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose." (Emphasis supplied)

In the contract upon which this action was based, Genematas agreed to sell and petitioner agreed to purchase:

"That part of Casa Blanca, Lot 1, a subdivision in Pima County, Arizona * * * designated Parcel No. 24 in tract 'A' * * * TOGETHER with an undivided 1/24 interest in and to the common area * * * TOGETHER WITH *a certain Condominium Villa, known as Model 'LA BRISA' to be constructed on said Parcel No. 24* in accordance with the approved Plans and Specifications attached hereto and by reference thereof made a part of this agreement." (Emphasis supplied)

Other portions of the contract refer to the construction as follows:

"Further terms and conditions of this sale of Real Property and Condominium Villa *to be constructed thereon * * *.*"

"Possession date shall be *construction completion* or within 120 days."

[1]. The contract on which the suit was brought was signed by George Genematas. The complaint alleged:

"That on May 25, 1967, the plaintiff, George Genematas, on behalf of the other plaintiffs, entered into an agreement with the defendant for the sale of certain real property together with certain improvements thereon. That said Agreement was in writing and a copy thereof is in the possession of the defendant and the contents thereof are well known to her."

"All taxes and insurance premiums shall be pro-rated on date of *completion of improvements.*"

"The purchase consideration for the herein legally described property and for the 'LA BRISA' Model Condominium Villa *to be constructed thereon* is $30,500.00."

"* * * on the improvements *to be constructed thereon* * * *."

"'Purchaser and/or her representative shall have the right at all times to inspect the aforementioned Condominium Villa during the *construction period.*"

"'Seller warrants that said Condominium Villa *will be constructed* in accordance with the approved Plans and Specifications attached hereto and *all construction* will be done in a workmanlike manner." (Emphasis supplied)

The petitioner maintains that Genematas, signatory to the contract, was a "contractor" within the meaning of A.R.S. § 32–1101 which provides:

"Within this chapter, 'contractor' means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, *undertakes to or offers to undertake to,* or purports to have the capacity to undertake to, or submits a bid to, or does himself or *by or through others,* construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith. The term contractor includes subcontractors and specialty contractors." (Emphasis supplied)

The plaintiffs, in opposition to the motion to dismiss, contended that Genematas was not a "contractor" but rather a person engaged in the sale of real estate, who although agreeing that a structure would be built upon parcel No. 24, did not agree to *personally* construct the structure and has not limited his agreement to the performance of acts but rather "has expanded them to include both the sale of real property and the performance of acts by a licensed contractor." (Quote from response to motion to dismiss.)

■ We do not agree with plaintiffs' position. We are of the opinion that under the facts of this case, the owner-subdivider comes within the definition of "contractor" set forth above. The contract does not purport to include "the performance of acts by a licensed contractor." The "undertaking" as to construction of the condominium villa was the subdivider's, i. e., he was the only one to whom the buyer, under the contract, could look for performance. As pointed out in Arizona State Tax Commission v. Staggs Realty Corp., 85 Ariz. 294, 337 P.2d 281 (1959), the scope of the legislative definition of "contractor" has been broadened:

"* * * at least since 1933 (compare Laws of 1931, Chapter 102, Section 3, defining a contractor as a person who 'undertakes *with another*' building construction, with Laws of 1933, Chapter 104, Section 3 deleting the words 'with another'), has contained a broader definition of 'contractor' * * *." 85 Ariz. at 296, 337 P.2d at 283.

■ We are also unimpressed with the argument that a total sum for both the realty and the construction is set forth in the contract, thus taking the subdivider's undertaking out of the operation of A.R.S. § 32–1101. The mere fact that the contract provides for a lump sum consideration cannot be used as a subterfuge to avoid the licensing requirement for one who "undertakes" building construction.

■ The fact that the plaintiffs were "owners" does not automatically exempt them from the licensing requirements. See, Moon v. Goldstein, 69 Cal.App.2d Supp. 800, 158 P.2d 1004 (1945). A.R.S. § 32–1121, as amended, prescribes the conditions where an owner is not required to be licensed:

"4. Owners of property who build structures thereon for the occupancy of

such owners and which structures are not offered for sale * * *."

The plaintiffs rely on the fact that the construction was actually performed by a licensed contractor. In the California statutory counterpart of our § 32–1101, § 7026, West's Anno. Business and Professional Code, the definition of a contractor is almost identical in language to our definition. The California legislature, however, unlike ours, has seen fit to exempt from the licensing requirement an owner of property who contracts for building with a licensed contractor. Section 7044, West's Anno. Business and Professional Code. Since the legislature of this State has not extended the scope of such exemption, this court cannot, as the plaintiffs would have us do, judicially legislate.

The purpose of the laws relating to licensing requirements for contractors is to protect the public against unscrupulous or unqualified persons purporting to have the capacity, knowledge, or qualifications of a contractor. Northen v. Elledge, 72 Ariz. 166, 232 P.2d 111 (1951); Westinghouse Electric Corp. v. Rhodes, 97 Ariz. 81, 397 P.2d 61 (1964); Pace v. Hanson, 6 Ariz. App. 88, 430 P.2d 434 (1967). The petitioner dealt with none other than the subdivider. By the terms of the contract, he was the one undertaking to build the condominium villa and we believe that the all-inclusive definition of "contractor" in A.R.S. § 32–1101 applies to him. Otherwise, the intended protection of the home-buying public would be jeopardized. As we stated in Pace v. Hanson, supra:

"We see as much service to public policy in applying the provision of a contractors' licensing law in this case as in any other. * * *" 6 Ariz.App. at 93, 430 P.2d at 439.

The contractor's licensing law, however, prohibits only the maintenance of an action for "collection of compensation" for construction work. Institute for Essential Housing, Inc. v. Keith, 76 N.M. 492, 416 P.2d 157 (1966). Therefore the subdivider here was not precluded, for lack of a license, from maintaining an action to collect for the realty sold to the petitioner, assuming the full price or a part thereof remained unpaid. A.R.S. § 32–1153 should not be given an overbroad construction so as to preclude partial recovery as to a valid portion of the contract. See Johnson v. Mattox, 257 A.C.A. 814, 65 Cal.Rptr. 185 (1968). If the consideration can be apportioned, each item of a contract will be treated as a separate unit. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966); Allen D. Shadron, Inc. v. Cole, 101 Ariz. 341, 419 P.2d 520 (1966). The complaint filed below, however, seeks recovery for a balance due on the entire contract with no attempt to apportion between the valid and invalid parts thereof. Under such circumstances, the inseparability infects the valid part, tainting it with invalidity and causing it to fail. Neil B. McGinnis Equipment Co. v. Riggs, 4 Ariz. App. 556, 422 P.2d 187 (1967).

Therefore, in its present posture, dismissal of the complaint should have been granted, the pleadings, affidavits and papers filed having demonstrated that the complaint failed to state a claim as a matter of law. Northen v. Elledge, supra. Whether or not the plaintiffs will be able to amend their complaint to state a claim for relief in rescission or otherwise is not presently before this court.[2]

The cause is remanded to the lower court for further proceedings not inconsistent with this opinion.

HATHAWAY, C. J., and MOLLOY, J., concur.

2. Generally, a party to an illegal bargain can neither recover damages nor rescind. Restatement of the Law, Contracts § 598. However, this rule is not absolute. Young v. Hampton, 221 P.2d 195 (Cal. Super.1950), aff'd, 36 Cal.2d 799, 228 P. 2d 1 (1951). Under certain circumstances, we conceive that judicial relief may be appropriate to avoid a harsh forfeiture. See, Restatement of the Law, Contracts § 600 and comment, example 3.