IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARKETECH INTERNATIONAL CORPORATION USA, INC., *Petitioner*,

*v.*

PROCESS SERVICE SPECIALISTS, L.L.C., *Respondent*.

No. 1 CA-SA 25-0039

FILED 10-23-2025

Appeal from the Superior Court in Maricopa County
No. CV2024-018710
The Honorable Erik Thorson, Judge

**VACATED AND REMANDED**

COUNSEL

Fennemore Craig, P.C., Phoenix
By Timothy J. Berg (argued), John Randall Jefferies,
Stacy Porche, Kaitlyn Smith
*Counsel for Petitioner*

Osborn Maledon P.A., Phoenix
By Thomas L. Hudson, Eric M. Fraser (argued), Alexandria N. Karpurk
*Co-Counsel for Respondent*

Holden Willits PLC, Phoenix
By Michael J. Holden, Ian L. Balitis
*Co-Counsel for Respondent*

Jones Walker LLP, Houston, TX
By Neal Sweeney, Tiffany C. Raush, William J. Shaughnessy
*Co-Counsel for Respondent*

---

## OPINION

Presiding Judge Brian Y. Furuya delivered the opinion of the Court, in which Chief Judge Randall M. Howe joined. Judge Angela K. Paton dissented.

---

**F U R U Y A**, Judge:

**¶1** Petitioner Marketech International Corporation USA, Inc. ("Marketech") seeks special action review of the superior court's order compelling arbitration and denying its motion for reconsideration.

**¶2** This case calls upon us to decide whether the court may compel arbitration by enforcing an arbitration clause contained within an illegal construction contract that, barring applicability of any exceptions, may be void because of a party's violation of A.R.S. Section 32-1151. As further explained below, contracts that are illegal and void because of such violations cannot be used to compel an unwilling party to arbitrate the issues of that illegality. Instead, the court must resolve any issues regarding illegality in the first instance and may compel arbitration of further issues only upon a determination that the arbitration clause is not void. Because the court improperly delegated the preliminary determination as to illegality and voidness over Marketech's objection to the arbitration, we accept special action jurisdiction, vacate the court's order, and remand for an evidentiary hearing to resolve those issues in the first instance.

### FACTS AND PROCEDURAL HISTORY

**¶3** On July 28, 2022, Marketech entered into a Master Services Agreement ("the Agreement") with Process Service Specialists, L.L.C. ("PSS") in connection with the construction of a manufacturing facility. At the time the parties executed the Agreement, PSS was not licensed as a contractor in Arizona. Nevertheless, PSS submitted a $28 million proposal to Marketech on August 4, 2022. Four days later, PSS obtained its contractor's license on August 8, 2022, and on September 15, 2022, the parties executed their first purchase order.

**¶4** A dispute arose between the parties concerning the performance of the construction work. After mediation failed, PSS filed a demand with the American Arbitration Association pursuant to the terms

of the Agreement, asserting claims exceeding $50 million. Marketech filed a complaint in the superior court and moved to stay the arbitration, arguing arbitration could not be compelled under the Agreement because PSS lacked legal capacity to contract under Arizona's licensing statutes at the time of formation. Marketech's argument was directed at both the Agreement as a whole and also specifically to the arbitration clause contained within it. PSS then moved to stay litigation and compel arbitration. After briefing, the court granted PSS's motion, reasoning (1) "the arbitrator must decide the contract's validity in the first instance," (2) Marketech failed to specifically challenge the delegation clause, and (3) Arizona's licensing statutes do not bar PSS from initiating arbitration.

**¶5**         Marketech filed this special action challenging that ruling. While it does not dispute that the Federal Arbitration Act ("FAA") would apply if the Agreement were validly formed, it argues that PSS's lack of a contractor's license at the time the Agreement was signed rendered it void at inception.

## DISCUSSION

## I.     We Accept Special Action Jurisdiction.

**¶6**         The Rules of Procedure for Special Actions guide us in accepting or declining special action jurisdiction and "should [be] use[d] and construe[d] . . . in a just manner that avoids unnecessary delay and expense." Ariz. R.P. Spec. Act. 1(c). Special action jurisdiction "is 'highly discretionary[.]'" *Yauck v. W. Town Bank & Tr.*, ___ Ariz. ___, ___ ¶ 12, 568 P.3d 386, 390 (App. 2025) (citing *Prosise v. Kottke*, 249 Ariz. 75, 77 ¶ 10 (App. 2020)); *see also* Ariz. R.P. Spec. Act. 12(a) ("Whether to accept jurisdiction of an appellate special action is within the court's discretion . . . . In accepting or declining jurisdiction, the court is determining whether remedy by appeal is equally plain, speedy, and adequate."). In the exercise of that discretion, we are directed to consider, among other factors, whether the petition for special action asks us to resolve questions "the resolution of which will materially advance the efficient management of the case, other than issues presented by ordinary dispositive motion practice[.]" Ariz. R.P. Spec. Act. 12(b)(7); *see also State Comp. Fund v. Superior Court*, 190 Ariz. 371, 374 (App. 1997) ("Special action jurisdiction is appropriate because . . . resolution of the issues will avoid undue expense and delay for both the litigants and others.").

**¶7**         Although A.R.S. Section 12-2101.01(A)(1) allows appeals from orders denying arbitration, it does not mention orders granting

arbitration—which our supreme court has interpreted as an intent to minimize interlocutory review. *See S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 52–53 ¶¶ 16–17 (1999). Thus, under normal circumstances, an order compelling arbitration is not immediately appealable. But though such orders may be reviewed on appeal after a final judgment confirms an award following full arbitration, *see Roeder v. Huish*, 105 Ariz. 508, 510 (1970), nevertheless, the "general rule [prohibiting appeals from orders compelling arbitration] provides little comfort in those cases in which there are complex issues and in which a bona fide dispute exists over arbitrability. In those instances, justice might be better served by pre-arbitration resolution of arbitrability." *Peabody*, 194 Ariz. at 53 ¶ 18.

¶8 This special action presents one such instance because it concerns whether a party can be compelled to expend very substantial time and resources arbitrating a dispute when the order to arbitrate is predicated on a potentially illegal and void contract. Specifically, the parties here agreed unequivocally at oral argument that PSS was unlicensed when the Agreement was signed and that the Agreement concerns provision of construction services. The question presented in the petition, therefore, raises only the narrow legal issue regarding whether PSS's lack of licensure under A.R.S. Sections 32-1151 and -1153 rendered the arbitration clause illegal and void. *See State v. Bergin*, 256 Ariz. 516, 521 ¶ 10 (App. 2023) ("[Petition] raises a purely legal issue, making it particularly appropriate for special-action review.").

¶9 PSS argues against accepting jurisdiction, observing that an arbitrator would be capable of deciding the issue of whether the Agreement is illegal. That may be so, but capacity and ability of the arbitrator are not the issue. Resolving this issue early via special action will materially advance the efficient management of the case. *See* Ariz. R.P. Spec. Act. 12(b)(7). Accepting jurisdiction now will resolve who must decide the threshold question of whether arbitration can be compelled at all in the face of a likely illegal and void contract, before a costly, duplicative, and unnecessary proceeding must be litigated to conclusion.

¶10 Citing the general principle established in *Roeder* and *Peabody* that orders compelling arbitration are reviewable after the superior court affirms the award, the dissent questions how this case is different from other cases where orders compelling arbitration did not merit special action review. But neither *Roeder* nor *Peabody* involved a court compelling arbitration using an illegal or void contract as the foundation for its order. In our view, justice is better served by requiring the court to resolve

4

disputes as to the illegality and voidness of an arbitration contract before compelling arbitration under that contract. *Peabody*, 194 Ariz. at 53 ¶ 18.

**¶11** For these reasons, we exercise our discretion and accept special action jurisdiction.

**II. Where a Party Disputes the Existence of an Agreement to Arbitrate, the Court, Not the Arbitrator, Must Decide Whether that Agreement Exists.**

**¶12** We review the superior court's decision to compel arbitration de novo. *Gray v. GC Servs., LP*, 256 Ariz. 480, 484 ¶ 9 (App. 2023); *see RLI Ins. Co. v. Nat'l Constr. & Dev., Inc.*, 258 Ariz. 504, 507 ¶¶ 3–4 (App. 2024).

**¶13** The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The inquiry under Section 2—whether a valid arbitration agreement was formed—is governed by state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Further, 9 U.S.C. Section 4 provides that where "the making of the arbitration agreement . . . [is] in issue," the court must proceed summarily to decide that question before ordering arbitration. *See id.* at 944; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

**¶14** Arizona follows this same rule. "On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, *the court shall* proceed summarily to decide the issue." A.R.S. § 12-3007(B) (emphasis added); *see also*, *Gray*, 256 Ariz. at 484 ¶ 9 ("When addressing whether the parties agreed to arbitrate a certain matter, courts generally apply state-law principles governing contract formation."); *Escareno v. Kindred Nursing Ctrs. W., L.L.C.*, 239 Ariz. 126, 129 ¶ 7 (App. 2016) ("The fundamental prerequisite to arbitration is the existence of an actual agreement or contract to arbitrate."); *Brake Masters Sys., Inc. v. Gabbay*, 206 Ariz. 360, 364 ¶ 12 (App. 2003) (noting courts should not presume arbitrability without "clear and unmistakable" evidence).

**¶15** Here, the parties concede that an arbitration proceeding had been initiated, and Marketech's complaint to halt that arbitration alleged that PSS's lack of capacity to contract rendered the arbitration provision void at inception. Accordingly, the superior court was obligated to resolve the threshold issue of formation. A.R.S. § 12-3007(B). It failed to do so and instead delegated that duty to the arbitrator. This was error.

¶16          PSS and the superior court rely on *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), to argue that challenges to contract validity must go to the arbitrator. But both cases are inapposite because neither concerned illegal or void contracts. In *Buckeye*, the parties did not dispute the existence of a contract; the issue was whether the formed contract was enforceable. 546 U.S. at 444 n.1. In *Rent-A-Center*, the Court likewise noted that neither party challenged the existence of the arbitration clause itself. 561 U.S. at 70 n.2. By contrast, Marketech's challenge is one of formation, not enforceability—it alleges that no valid contract to arbitrate was ever formed because PSS's lack of a contractor's license rendered the Agreement and its arbitration clause illegal and void. Thus, we hold that this threshold issue must first be resolved by the court before Marketech can be compelled to arbitrate. *See First Options*, 514 U.S. at 944; *Henry Schein*, 586 U.S. at 69; A.R.S. § 12-3007(B).

### III.    The Agreement is Illegal Under Arizona Law, But the Superior Court Must Determine if the Agreement is Void.

¶17          Arizona law provides that:

> It is unlawful for any person, firm, partnership, corporation, association or other organization . . . to engage in the business of, submit a bid or respond to a request for qualification or a request for proposals for construction services as, act or offer to act in the capacity of or purport to have the capacity of a contractor without having a contractor's license in good standing in the name of the person, firm, partnership, corporation, association or other organization as provided in [Chapter 10 of Title 32, Arizona Revised Statutes].

A.R.S. § 32-1151. Notably, this prohibition applies not only to unlicensed contractors who perform construction work, but also to those who negotiate for, offer, or agree to provide construction services, or even merely represent that they are authorized to do so. *Id.*; *see also* A.R.S. § 32-1101(6). When a contract is deemed illegal under this statute, it is generally void. *See WB, The Bldg. Co., LLC v. El Destino, LP*, 227 Ariz. 302, 308 ¶ 15 (App. 2011); *Hunt v. Douglas Lumber Co.*, 41 Ariz. 276, 287–88 (1933) (recognizing that predecessor statute to A.R.S. § 32-1151 rendered contracts entered by unlicensed contractors void ab initio because the statute made such contracts illegal); *Northen v. Elledge*, 72 Ariz. 166, 171–73 (1951) (same); *Miller v. Superior Court*, 8 Ariz. App. 420, 423 (1968) (same); *Pace v. Hanson*, 6 Ariz. App. 88 (1967) (same); *see also Yank v. Juhrend*, 151 Ariz. 587, 590

6

(App. 1986) (noting that generally, unless legislative intent specifies otherwise, contracts made in contravention of a statute are illegal and void). Further, an arbitration clause embedded in that void contract—and upon which it is dependent for context—would be likewise void. *See Austin v. Austin*, 237 Ariz. 201, 206 ¶ 12 (App. 2015); A.R.S. § 12-3006(A) (an arbitration clause is not valid where grounds exist for revoking the contract as a whole).

¶18 In this case, it is undisputed that PSS was unlicensed when it negotiated for and signed the Agreement on July 28, 2022, and its eventual licensure does not cure that initial defect. PSS counters that the Agreement did not become operative until the first purchase order was executed in September 2022—after it had acquired its contractor's license. In other words, PSS argues that formation did not occur until after it was licensed. We disagree. It does not matter that the Agreement did not contain finalized pricing or scope of work, or that construction had not yet begun. Arizona law applies the stringent licensing requirement even at the proposal and negotiation stage. A.R.S. § 32–1151; *El Destino*, 227 Ariz. at 308 ¶ 15. Because PSS admits, at the very least, it negotiated to provide construction services while unlicensed, the statutory bar was triggered even before execution, and thus, the Agreement is illegal and may be void. If void, the Agreement and its arbitration clause are a nullity and confer no authority upon the court to compel an unwilling Marketech to arbitration. *See Escareno*, 239 Ariz. at 129 ¶ 7.

¶19 There are two circumstances that may prevent an arbitration contract rendered illegal by operation of A.R.S. Section 32-1151 from being defeated for voidness: (1) complete renegotiation of the contract after licensure; or (2) substantial compliance with the licensing requirements. We address each in turn.

¶20 First, a complete renegotiation and agreement to a new contract after licensure would render the void contract moot. This is because such renegotiation and agreement after licensure would result in a new contract that is not subject to the fatal defects for violation of A.R.S. Section 32-1151, which in turn provides a valid basis for enforcing an arbitration clause contained in the new contract. On the other hand, a mere subsequent transaction that is dependent upon prior void agreements cannot retroactively validate the void contract. *See Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 384 ¶ 8 (2023) ("A void contract is one which never had any legal existence or effect, and it cannot in any manner have life breathed into it."). At oral argument it was discussed that subsequent purchase and change orders could potentially have intended a

complete renegotiation of the parties' agreement, thereby establishing a legal construction contract entered after PSS's licensure. But such is not conclusive from the record before us, so this becomes a question of fact for the superior court to decide on remand.

**¶21** Second, Arizona recognizes a narrow, equitable exception for contractors who substantially comply with licensing requirements, *see Crowe v. Hickman's Egg Ranch, Inc.*, 202 Ariz. 113, 115 ¶ 8 (App. 2002), potentially making a contract merely voidable, rather than void. *Smith v. Pinnamaneni*, 227 Ariz. 170, 173–74 ¶ 9 (App. 2011). Substantially complying with licensing requirements allows an unlicensed contractor to bring a suit under A.R.S. Section 32-1153, which otherwise prohibits unlicensed contractors from seeking compensation for work performed. *Aesthetic Prop. Maint. Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 78 (1995). Because such compliance allows an unlicensed contractor to sue under an otherwise void contract, substantial compliance with licensing requirements makes the contract voidable instead of void. By parity of reasoning, voidable contracts are subject to defenses regarding enforceability rather than formation, and therefore, may properly be referred to an arbitrator for resolution. *See e.g.*, *Buckeye Check Cashing, Inc.*, 546 U.S. at 444. But the record is also not clear on this issue, so whether PSS could meet this standard is a factual determination the superior court must resolve before arbitration can be compelled.

**¶22** Because the court cannot use a void arbitration agreement to force Marketech to arbitrate, and because the two exceptions discussed above raise factual issues as to the legal existence of the Agreement, the court, not an arbitrator, must resolve these issues before compelling arbitration. Therefore, we vacate the superior court's order compelling Marketech to arbitrate formation issues. We remand to the court to determine whether: (1) the parties completely renegotiated and agreed to a new contract with a valid arbitration agreement, compliant with A.R.S. Section 32-1151; or (2) the Agreement is merely voidable because of substantial compliance. Only if the court finds that one or both of these circumstances pertain may it then enter an order compelling Marketech to arbitration.

## IV. PSS's Remaining Arguments Fail.

**¶23** To the extent PSS contends that the arbitration clause survives unless specifically challenged, that principle applies only when contract enforceability is at issue—not formation. *See Rent-A-Center*, 561 U.S. at 71–72. We recently reaffirmed this distinction in *Duncan v. Pub. Storage, Inc.*,

No. 1 CA-CV 24-0598, 2025 WL 1304599, at *2 ¶ 9 (Ariz. App. May 6, 2025) (mem. decision), where we held that enforceability challenges must specifically target the arbitration clause. But where the issue is formation, that requirement does not apply. By its own terms, the FAA finds application only when a valid agreement to arbitrate exists. *See* 9 U.S.C. § 2; *see also* A.R.S. §§ 12-1501 (same), -3003(A)(3) (specifying application when there is "an agreement to arbitrate whenever made"). Where there is no valid agreement to arbitrate, such as when an arbitration agreement is illegal and void ab initio, arbitration—including of issues regarding arbitrability—cannot be compelled.

**¶24**      Further, PSS argues that even if the Agreement as a whole is void because of its lack of a contractor's license, the arbitration clause itself still survives and compels arbitration because it is separable. *See Rent-A-Center*, 561 U.S. at 70 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *see also Hamblen v. Hatch*, 242 Ariz. 483, 487 ¶¶ 15–16 (2017) (recognizing Arizona's adoption of the separability doctrine). PSS contends that, generally, agreements to arbitrate do not require a contractor's license to be valid. Thus, because the Agreement's arbitration clause must be regarded as a separate contract from the Agreement itself, *see Rent-A-Center*, 561 U.S. at 70, that clause survives Marketech's challenge grounded in PSS's lack of a contractor's license. PSS's argument goes too far.

**¶25**      True, arbitration clauses must be treated as separable. *Hamblen*, 242 Ariz. at 487 ¶¶ 15–16. And an agreement to arbitrate in a general transaction does not require a contractor's license to be valid. *See generally* A.R.S. §§ 12-1501, -3003. But the arbitration agreement at issue in this case is clearly not for a general transaction. Rather, it is unquestionably an agreement to arbitrate disputes involving a construction contract. The terms of the Agreement—and the inclusion and language of the arbitration clause contained within it—establish that the clause was part of the negotiations for construction services. That context is sufficient to bring the separate arbitration contract within the ambit of A.R.S. Section 32-1151. And as provided in A.R.S. Section 32-1153, no contractor shall:

> commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required . . . without alleging and proving that the [contractor] was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

¶26        Enforcing any award under the arbitration agreement at issue would require PSS to do so in court and would necessarily depend upon the context and purpose for which the clause was entered, i.e., for construction services. But it is not disputed that PSS lacked a valid contractor's license when the Agreement containing the instant arbitration clause was signed. Nor is it reasonably disputable that the instant arbitration clause is for the arbitration of disputes surrounding the provision of construction services under the Agreement. Thus, A.R.S. Sections 32-1151 and -1153 apply to the arbitration clause, even when treated as a separate contract. Unless PSS establishes at least one of the exceptions to the requirements of those statutes as discussed above, the statutes will prevent PSS from enforcing the arbitration clause, though it be separable. Therefore, the separability of the arbitration clause does not alter the result here.

## CONCLUSION

¶27        We accept special action jurisdiction. On this record, we hold that the superior court may not compel arbitration of the issues of legality and voidness of the Agreement and its embedded arbitration clause. Instead, because formation is at issue, the court must itself resolve the legality and voidness of the Agreement and the arbitration clause before compelling arbitration of any further issues or disputes as described above. *See supra* ¶ 22. Therefore, we vacate the court's order and remand for the superior court to conduct such proceedings as may be necessary to resolve these issues.

¶28        PSS requests attorneys' fees pursuant to A.R.S. Section 12-341.01, but because no decision on the merits has been reached, the request is premature and denied. *Austin*, 237 Ariz. at 210–11 ¶ 34. But this denial is without prejudice to seek fees incurred during this special action at conclusion of the action on its merits. As the prevailing party on appeal, we award Marketech its costs upon its compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

**P A T O N,** Judge, dissenting:

¶29        I dissent because I would have declined to exercise special action jurisdiction.

¶30　　　　The legislature has identified six instances in which an arbitration order, judgment, or decree can be appealed. A.R.S. § 12-2101.01. These include an order denying an application to compel arbitration, orders denying confirmation of an award, modifying or correcting an award, and the final award. *See id.* Although Section 12-2101.01 expressly permits appeals from orders denying to compel arbitration, it is silent as to orders compelling arbitration, the type of order at issue here. *Id.*

¶31　　　　In *Roeder v. Huish*, our supreme court held that an order compelling arbitration was not appealable prior to the arbitration proceedings, but such an order could be properly reviewed after the arbitration award was confirmed. 105 Ariz. 508, 510 (1970). The court reaffirmed this principle in *Southern California Edison Company v. Peabody*, when it held that a superior court order compelling arbitration is not appealable until a final order is entered after arbitration proceedings have concluded. 194 Ariz. 47, 54, ¶ 23 (1999). As our supreme court reasoned in *Peabody*, by making orders compelling arbitration non-appealable, the legislature disfavors interlocutory review of orders compelling arbitration. *Id.* at ¶¶ 16–17 ("[A] multitude of appeals from orders compelling arbitration would use judicial and litigant resources when arbitration might determine all issues to the parties' satisfaction.").

¶32　　　　It thus follows that Marketech's action here is "equally appropriate to address by appeal" after the arbitration process takes place, *i.e.*, the award is confirmed in a final judgment—which is one of our considerations in determining whether to exercise special action jurisdiction. Ariz. R. P. Spec. Act. 12(c)(4). In citing *Peabody*, the majority justifies its exercise of special action jurisdiction here after noting that "[the] general rule [prohibiting appeals from orders compelling arbitration] provides little comfort in those cases in which there are complex issues and in which a bona fide dispute exists over arbitrability." Decision *supra* ¶ 7. And "[i]n those instances, justice might be better served by pre-arbitration resolution of arbitrability." Decision *supra* ¶ 7.

¶33　　　　Marketech and the majority contend that we should accept jurisdiction because the arbitration agreement is illegal and it "should not be forced to arbitrate with PSS over the next year incurring significant attorneys', arbitration, and expert fees and costs, which will only result in a decision that PSS can never enforce in court." But I am not persuaded that avoiding the expense of arbitration is a compelling reason to consider the issue now, when it is "equally appropriate to address by appeal." Ariz. R. P. Spec. Act. 12(c)(4). Particularly where, as here, Marketech could have sought special action review of the superior court's denial of its motion to

certify its order under Rule 54(b)—the procedure *Peabody* laid out for challenging an order compelling arbitration via special action review. *Peabody*, 105 Ariz. at 53, ¶ 18. If we were to decline, it is also possible that the arbitrator may agree with Marketech's position on the arbitrability issue in that proceeding and, even if it did not, Marketech could still prevail in the arbitration on the underlying merits. But the bottom line is, if Marketech loses in the arbitration, the arbitrability issue it raises via special action here is "equally appropriate to address by appeal." Ariz. R. P. Spec. Act. 12(c)(4).

**¶34**        For these reasons, I would have declined to exercise special action jurisdiction here. I therefore respectfully dissent.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:         JR