584 P.2d 579

**PORTA HOUSE, INC., a corporation, Appellant,**

v.

**SCOTTSDALE AUTO LEASE, INC., an Arizona Corporation, Appellee.**

**SCOTTSDALE AUTO LEASE, INC., an Arizona Corporation, Cross-Appellant,**

v.

**KAYENTA SCHOOL DISTRICT # 27 BOARD OF TRUSTEES, and Frank M. Donald, Sr., Bradley Blair and Loren O. Joseph, as the Board of Trustees, and Tully Norris, as Superintendent of School District # 27, and Louis B. Ipharr, as Business Manager of School District # 27, Cross-Appellees.**

No. 1 CA–CIV 3647.

Court of Appeals of Arizona,
Division 1,
Department A.

June 22, 1978.

Rehearing Denied Aug. 1, 1978.

Review Denied Sept. 14, 1978.

Brown & Bain, P. A. by Eugene D. Cohen, Ronald G. Cooley, Phoenix, for appellant.

Johnson, Shelley & Roberts by J. LaMar Shelley, Mesa, for appellee-cross-appellant.

Ward, Hufford & Blue by C. Benson Hufford, Flagstaff, for cross-appellees.

## OPINION

FROEB, Chief Judge.

Appellant Porta House, Inc. seeks review of the trial court's order granting summary judgment in favor of appellee Scottsdale Auto Lease, Inc. Scottsdale Auto Lease has appealed from the order granting summary judgment against it in favor of cross-appellee Kayenta School District # 27 Board of Trustees, et al (Kayenta), third party defendants.

Two main issues are raised in this appeal and cross-appeal. First, whether the failure of Porta House to obtain a contractor's license barred its suit against Scottsdale Auto Lease on a contract for prefabricated building components which it manufactured. Second, whether a contract between Scottsdale Auto Lease and Kayenta for the sale of the components is enforceable.

Viewing the record in the light most favorable to the parties opposing the respective summary judgments, the basic facts giving rise to the case are as follows. On May 31, 1974, Robert DeSoto, an employee of Kayenta, signed three agreements with Scottsdale Auto Lease entitled "Vehicle Lease Agreements." The leases referred to two "100 × 60 warehouses" and one "24 × 60 Class Building." Together the written leases obligated Kayenta for payments totaling in excess of $100,000. Scottsdale Auto Lease then negotiated with Porta House, a manufacturer of prefabricated building components, with respect to the purchase of "(2) New 60′ × 100′ Porta House Storage Buildings" and "(1) New 24′ × 60′ Porta House Storage Building." The written agreement resulting on June 17, 1974, provided that the products would be shipped F.O.B. Kayenta, Arizona, and that "unloading, concrete slabs, foundations, erection, hot mop roofing, etc., [would] be performed by others at the Kayenta job site." In July 1974, Kayenta notified Scottsdale Auto Lease that DeSoto had had no authority to enter into the described agreement and that the school district would not accept the three buildings. Scottsdale Auto Lease notified Porta House to cease production, but by that time the manufacture of the prefabricated components was nearly completed. Subsequently, Porta House attempted delivery of the components of the smaller building, but Kayenta refused delivery.

Porta House brought suit against Scottsdale Auto Lease for damages due to breach of contract. Scottsdale Auto Lease, by third party complaint, brought Kayenta into the action, based on the lease agreements. Following cross motions for summary judgment, judgments were entered in favor of Scottsdale Auto Lease against Por-

ta House and in favor of Kayenta on the third party complaint.

Scottsdale Auto Lease defeated the Porta House claim in the trial court on the ground that Porta House did not have a contractor's license as required by Title 32, Chapter 10, of the Arizona Revised Statutes, and that recovery for the sale of the prefabricated building components was barred by A.R.S. § 32–1153 which reads:

> No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

There are two licensing provisions to consider on this issue. A.R.S. §§ 32–1171 through 32–1197 (formerly §§ 44–1701 through 44–1714), relating to mobile and manufactured housing standards, establishes licensing requirements for the manufacture of certain types of mobile homes, factory-built buildings, and recreational vehicles. We hereafter refer to these laws as the manufacturer's licensing law. The other relevant licensing provisions are A.R.S. §§ 32–1101 through 32–1168 and for the purpose of this opinion are referred to as the contractor's licensing law. Of specific concern here are the provisions of former subsection (6) of A.R.S. § 32–1121 in effect when the contracts in this case were entered into. The exemption found in that subsection read:

> This chapter shall not be construed to apply to:
>
> .     .     .     .     .
>
> (6) Any materialman or manufacturer furnishing finished products, materials or articles of merchandise who do not install such items.

It was argued before the trial court and now to us that the manufacturer's licensing law and the contractor's licensing law must be read and harmonized in such a way that construction and sale of prefabricated building components must be licensed under one or the other of the licensing laws. The trial court concluded that the prefabricated building components were not subject to the manufacturer's licensing law and that the contractor's licensing law applied because the building components did not come within the exemption of A.R.S. § 32–1121(6). We disagree both with the argument that the sale of the prefabricated building components must be licensed under one or the other of the regulatory laws as well as with the conclusion that the exemption of A.R.S. § 32–1121(6) does not apply.

We find nothing in either of the licensing provisions which leads us to conclude that one or the other necessarily applies. Therefore, in determining that the building components in this case are exempt from the contractor's licensing law, we do not reach any issue concerning the applicability of the manufacturer's licensing law.

■ Subsection (6) of A.R.S. § 32–1121 states specifically that the licensing law does not apply to the materialman or manufacturer *who does not install* what he furnishes. That is the situation here. Porta House did no more than agree to furnish the component parts of the buildings. It was clear that someone else would have to assemble and erect the various components. It is not necessary, therefore, to belabor the remaining language of subsection (6). That is, we need not distinguish whether the building components were "finished products," "materials" or "articles of merchandise." We do say that they fit into at least one of these categories. We disagree with the contention made by Scottsdale Auto Lease that the contract was for the construction of three completed buildings and, therefore, not for the furnishing of "finished products, materials or articles of merchandise." Porta House was, therefore, exempt from the requirement of licensing under the contractor's licensing law.

Scottsdale Auto Lease relies heavily upon *Pace v. Hanson*, 6 Ariz.App. 88, 430 P.2d 434 (1967) as authority that the seller of

components of a prefabricated building is not exempt from licensing under the contractor's licensing law. However, A.R.S. § 32–1121(6) was not in effect when *Pace* was decided and, therefore, *Pace* did not involve an interpretation of the exemption provision at issue here.

The resolution of this key issue against Scottsdale Auto Lease requires reversal of the summary judgment in its favor. Since we resolve the exemption question as we do, it is not necessary to interpret the statutes relating to licensing of manufacturers, i. e., whether the legislature intended to exclude manufacturers of buildings exceeding 4500 square feet from all licensing, or whether a prefabricated building which is to be used as a portable classroom is a "commercial building" under the manufacturer's licensing law.

We turn next to the appeal of Scottsdale Auto Lease against Kayenta. The issue here arose from a third party action brought by Scottsdale Auto Lease to enforce its written agreements with Kayenta relating to the lease and delivery of the prefabricated buildings. The trial court dismissed the third party complaint following its determination that Porta House could not recover. Although it is not apparent whether the trial court ruled upon the substantive issues in this claim or whether it dismissed the third party complaint because it dismissed the main claim, we determine that the judgment upon the third party claim in favor of Kayenta is correct and should be affirmed.

Kayenta presents a convincing defense against recovery by Scottsdale Auto Lease based upon the lack of authority of the school employee who signed the agreements. As this issue is dispositive of the cross-appeal, we do not reach other issues relating to the authority of the district itself under A.R.S. §§ 15–442 and 15–445.

On May 31, 1974, Robert DeSoto, an employee of Kayenta, signed three lease agreements with Scottsdale Auto Lease, each of which related to one of the prefabricated buildings mentioned previously. The total stated value of the buildings was $104,106.80. Kayenta contends that DeSoto was never given authority by the board of trustees of the school district to enter into the agreements with Scottsdale Auto Lease. We agree.

■ At a meeting held on July 26, 1973, the board passed a resolution which the minutes recorded as follows:

The Board discussed signing of District funds. Mr. Redshirt made a motion that, by resolution, the Board authorize Mr. Severtson, or his designee, to sign all vouchers and documents regarding District funds. Mr. Isaac seconded the motion, and the motion carried.

Scottsdale Auto Lease argues that by virtue of this resolution, Severtson, or his designee, was authorized to enter into the agreements in question. Kayenta argues that while the resolution purports to authorize a signature, it does not authorize Severtson, or his designee, to make a decision to bind the district to the obligations set forth in the agreements. Kayenta also argues that even if it did, the purported delegation of authority belonging to the school district was void because the district cannot delegate this authority, relying primarily upon *School District No. 9 v. First National Bank,* 58 Ariz. 86, 118 P.2d 78 (1941). We do not reach the latter question however, because in our opinion the quoted resolution did not on its face give to Severtson, or his designee, the authority to commit the district to the financial obligations represented by the agreements. At best, it merely purports to authorize Severtson, or his designee, to sign "vouchers and documents" otherwise authorized by the board.

After the date of the resolution but before the agreements were signed, Severtson, the superintendent of the district, made DeSoto his designee. He thereafter resigned on March 14, 1974, as did two members of the three-man board. After two new members were appointed to the board, a letter dated May 28, 1974, signed only by the two new members, was sent to DeSoto. It read:

This letter authorizes R. E. DeSOTO to act as the Agent for Kayenta School Dis-

trict 27 and for his signature to be recognized as the designee for Kayenta School District 27 for legal instruments between Kayenta School District 27 and Scottsdale Auto Leasing, Inc. through June 30, 1974. The evidence indicates that it was the intention of the two members signing the letter to give DeSoto authority to deal with Scottsdale Auto Lease on behalf of the district. The evidence also indicates it was given with the intention that Scottsdale Auto Lease rely upon it. The lease agreements were signed three days later. Thereafter, a meeting of the board was held on July 5, 1974, at which time Kayenta officials informed Scottsdale Auto Lease that the leases were null and void and that Kayenta would not accept the prefabricated buildings. There has been no subsequent ratification of the agreements in issue.

Scottsdale Auto Lease argues that the authorization stemming from the resolution of July 26, 1973, was still in effect and the letter of May 28, 1974, was merely confirmation by the two new board members of that fact.

■ At the outset, we must recognize that the letter of May 28, 1974, standing alone, failed to give DeSoto authority to enter into the agreements because it was not the result of action taken at a public meeting of the board as prescribed by A.R.S. § 38–431.01, referred to as the "open meeting law." As is stated in A.R.S. § 38–431.05, such action taken other than at a public meeting is null and void. It is clear from the record that no meeting of the newly constituted board was held at which DeSoto could have been authorized to act for Kayenta.

The argument that the letter of May 28, 1974, confirmed the action taken by the board on July 26, 1973, is obviously of no merit since we have decided that Severtson and his designee never had authority to enter into the agreements in the first place.

■ Finally, Scottsdale Auto Lease argues that the doctrine of promissory fraud operates in its favor to allow it to enforce the lease agreements. Scottsdale Auto Lease refers us to *School District No. 69 v. Altherr,* 10 Ariz.App. 333, 458 P.2d 537 (1969) in support of the proposition that the doctrine is available against a school district where there is a concurrence of the nine requisite elements of fraud. As *Altherr* points out however, "a failure of proof as to any single element is fatal." *Id.* at 338, 458 P.2d at 542. There is absent here, as there was in *Altherr,* a right to rely. The law is well settled that persons dealing with a school district are charged with the duty of ascertaining that the person with whom they are dealing possesses the legal authority to bind the district in the transactions that ensue. See *School District No. 9 v. First National Bank.* Scottsdale Auto Lease argues that the letter of May 28, 1974, signed by two board members, gave it the right to rely upon DeSoto as having been authorized to sign the agreements on behalf of Kayenta. We disagree. Under the *Altherr* case, Scottsdale Auto Lease was charged with notice that the authorization in the letter was not the result of legal action by the board of trustees. This is particularly true in this instance in view of the mandate of A.R.S. § 38–431.05 which would render null and void the letter of May 28, 1974, to the extent that it is held out to be the official action of the board purporting to authorize DeSoto to act for it.

For the reasons stated, the judgment in favor of Scottsdale Auto Lease, Inc. against Porta House, Inc. is reversed and the case is remanded to the trial court for further proceedings between the parties consistent with our opinion. The judgment in favor of Kayenta School District # 27 Board of Trustees, et al., and against Scottsdale Auto Lease, Inc. is affirmed.

HAIRE, P. J., and NELSON, J., concur.