578 P.2d 619

**James J. MATISON and Nancy J. Matison, husband and wife, Appellants,**

**v.**

**Louis W. BARASSI and Henrietta S. Barassi, husband and wife, Appellees.**

**No. 2 CA–CIV 2625.**

Court of Appeals of Arizona, Division 2.

Feb. 14, 1978.

Rehearing Denied March 21, 1978.

Review Denied April 18, 1978.

Monroe & Eisenstein, P. C. by Michael J. Monroe, Tucson, for appellants.

Lawrence P. D'Antonio, Tucson, for appellees.

OPINION

HATHAWAY, Judge.

Appellees, hereinafter referred to as Barassi, brought suit against appellants, hereinafter referred to as Matison, to recover $4,500 on a promissory note received in partial consideration for a lot and building sold to Matison. At the time of sale, Barassi was in the process of restoring the 1885 adobe buildings located on the lot situated in the Tucson Barrio. A second count sought $600 as reasonable rental for the property, $484.76 for utilities and $439.62 for expenditures and repairs furnished to Matison. Matison answered denying anything was due on the note and as an affirmative defense, alleged that the action was barred by A.R.S. § 32–1153, since Barassi was not a licensed contractor. Matison also counterclaimed for compensatory damages. After trial to the court without a jury, judgment was entered in favor of Barassi on the note for $4,500 plus $900 attorney's fees and $542 for the combined count two claims. Matison was awarded $1,000 on the counterclaim.

Matison questions on appeal whether the trial court erred in not requiring a contractor's license as a prerequisite to Barassi's

recovery. It is undisputed that Barassi was not a licensed contractor as defined under A.R.S. § 32–1101. Matison contends that the nature of the work in question required that it be performed by a licensed contractor under Arizona law and that Barassi comes under none of the statutory exemptions.

A.R.S. § 32–1101, 1972 Ariz.Sess.Laws, ch. 167, § 1, at the time the subject contract was entered into, defined "contractor":

"In this chapter, unless the context otherwise requires, 'contractor' means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith. The term contractor includes subcontractors and specialty contractors."

An unlicensed contractor is precluded under A.R.S. § 32–1153 from maintaining a court action to recover compensation for prohibited activities:

"No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose."

Our review of the record leads us to conclude that this appeal is well-taken and that the judgment must be reversed.

The record discloses that Barassi, an attorney, acquired the property located at 92 W. Simpson Street in Tucson in 1969 for less than $7,000. Barassi had previously acquired, restored and sold another property.

In January 1974, while restoration of the subject property was under way, Matison, a real estate broker, first discussed with Barassi the possibility of leasing all or part of the property for an office. Negotiations for a sale ensued and on March 19, 1974, the parties signed a deposit receipt and agreement for the sale of the property for $102,500, with a $12,500 down payment and the remaining $90,000 was to be secured by a mortgage on the property. The down payment was to be paid in cash at the time of closing. Attached to the deposit receipt and agreement was the following exhibit including items Barassi covenanted to perform:

"Exhibit 'A'

The sellers shall covenant as follows:

1. That they will use their best efforts to complete the construction and remodeling within 56 days from the date hereof.

2. The remodeling shall include the following specifications:

(a) All interior flooring to be of red brick, basket weave pattern.

(b) Central refrigeration and heating, including underground air returns.

(c) Three fireplaces at selected sites of purchasers.

(d) Patio wall on the South Side of the property to limit of legal height, all along South property line, to be made of concrete block and stucco.

(e) Back porch, as shown on the diagram.

(f) Two bathrooms, toilet and washbowl in each.

(g) All new electrical service.

(h) Ceiling shall be constructed of Sahuaro ribs and insulation to satisfaction of purchasers.

(i) Seller shall install underground telephone conduit at a cost not to exceed $250.00 for materials and labor.

(j) The seller will furnish and install 14 overhead light fixtures, wood casing and fluorescent lighting.

(k) All windows shall be steel casement and have glass in the windows.

(l) All doors shall be new, either stained and varnished or painted, with new hardware.

(m) The sellers shall have no responsibility for landscaping, except the lot will be leveled in preparation for landscaping.

(n) The roof shall be oiled with crankcase oil, and all wood trim shall be painted to the choice of the color of the seller.

(o) The interior walls shall be white and the purchasers shall have their choice of color with respect to the exterior walls and trim.

(p) The foundation stones shall be burnished and acid washed.

(q) The Southeast room shall have rough plumbing of hot and cold water, gas and sewer.

(r) The house shall be finished with respect to all electrical outlets and plumbing outlets, with the exception of the plumbing to the Southeast room.

3. Buyer has made a physical inspection of the property or lot and is buying the same upon his own inspection and not upon any reliance or representation made by the seller.

4. Buyer may not prepay subject note for the balance of purchase price for the first three years without penalty, and buyers shall guarantee payment of the subject note if executed by purchasers' assignee.

5. There shall be an insurance binder on that property in the sum of $90,000.00 of improvement value before the property changes hands.

6. Any liability arising from the repair and construction on the property up to the date of the closing shall be the responsibility of the sellers."

The closing date of May 15, 1974, passed and the work on the building continued. Matison then arranged with Barassi to pay part of the downpayment, $4,500, by promissory note which was to become due and payable when the items specified in Exhibit "A" were completed. Barassi determined that the building was completed in December of 1974 and undertook collection of the promissory note. These proceedings ensued.

In Exhibit "A" the parties saw fit to characterize the activity, and we believe accurately so, as "construction and remodeling". Among other activities included in the statute defining a contractor is an undertaking to "construct . . . repair . . . improve . . . any building . . . or to do any part thereof . . ." Perusal of Exhibit "A" readily reveals substantial activities to be performed by Barassi and claimed to have been satisfactorily completed, e. g., installation of interior brick flooring of basket weave pattern; "remodeling" of, (1) three fireplaces at sites to be selected by Matison; (2) patio wall to be made of concrete block and stucco; (3) back porch; (4) two bathrooms; (5) ceiling constructed of sahuaro ribs and insulation; (6) installation of underground telephone conduit; (7) furnishing and installation of 14 overhead light fixtures; (8) leveling of lot; (9) painting, installation of plumbing and electrical wiring.

Barassi contends that he did not "undertake" as that term is used in A.R.S. § 32–1101 to do the work. He argues that "undertake" contemplates a situation where work is begun for the benefit of another and since his initial intent was to do the work for himself and not to reconstruct the building for Matison for compensation, he cannot be deemed a "contractor" within the meaning of A.R.S. § 32–1101. He equates "undertake" with "commence". Thus, early in the construction of a building for himself, an unlicensed contractor could decide to sell to another and complete the structure to the buyer's specifications without the need of obtaining a contractor's license. We reject this argument.

The statute includes within its definition one who ". . . does himself or by or through others . . ." the proscribed activity. It is undisputed that after the deposit receipt and agreement was signed on March 19, 1974, the work was

being done for Matison and was part of the consideration given for the purchase price. Noteworthy is the promissory note due date in the instant litigation, "upon completion of building . . . ." Matison accepted some of Barassi's original plan for the project, but certain revisions were made to meet Matison's specifications. In any event, the work performed for Matison under Exhibit "A" clearly places Barassi within the definition of a "contractor" as contained in A.R.S. § 32–1101. We have been directed to no good reason or authority to exempt a contractor from the statute because construction did not begin at the instance of the ultimate purchaser. Such an exception would conflict with the statutory purpose of protecting the public from unsatisfactory work. *Chickering v. Ogonowski Construction Co., Inc.*, 18 Ariz.App. 324, 501 P.2d 952 (1972); *Sobel v. Jones*, 96 Ariz. 297, 394 P.2d 415 (1964); *Northen v. Elledge*, 72 Ariz. 166, 232 P.2d 111 (1951). In *Northen v. Elledge*, supra, the court held that a plaintiff could not recover where an alleged cause of action had accrued subsequent to the expiration date of his contractor's license; that the plaintiff's attempt at recovery would not be permitted since it could not be established without showing that he had broken the contractor licensing laws.

Barassi's contention that the work was performed without consideration and that the promissory note in question and other consideration given by Matison in connection with the deposit receipt and agreement was solely for the delivery of a deed to the real property, requires that we disregard the evidence and the very terms and conditions of the parties' agreement. As previously pointed out, the exhibit attached to the deposit receipt and agreement sets forth in detail the nature of the work to be furnished by Barassi in order to complete his performance. And, as we have also noted, the promissory note in question here does not, by its terms, fall due until the construction work is performed. In *Pace v. Hanson*, 6 Ariz.App. 88, 430 P.2d 434 (1967), we held that a promissory note

can serve as consideration for a construction contract within the meaning of the contractor's licensing statutes and that placing the promise to pay in the solemn form of a promissory note does not relieve the contractor from the requirements of obtaining a license.

We cannot accept appellees' argument that the work performed falls within the following statutory exemptions. A.R.S. § 32–1121 provided:[1]

"Persons not required to be licensed This chapter shall not be construed to apply to:

\* \* \* \* \* \*

4. Owners of property who build structures thereon for the such owners and which structures are not offered for sale. . . . In this paragraph the term 'sale' includes any arrangement between two or more persons as a result of which there is an agreement to transfer property for a consideration.

\* \* \* \* \* \*

13. Owners or their salaried employees repairing or maintaining structures owned by them."

We dealt with the property owners' exemption set forth in Paragraph 4, supra, in *Miller v. Superior Court in and for the County of Pima*, 8 Ariz.App. 420, 446 P.2d 699 (1968). There, an owner-subdivider entered into contracts with third parties for sale of dwellings to be constructed on the owner-subdivider's property. Although the dwellings were constructed by licensed contractors, the owner-subdivider was precluded from recovery for their construction since he was not a licensed contractor and fell within the definition of "contractor". Likewise, in the instant case, the owner undertook activity as a "contractor" and is precluded under A.R.S. § 32–1153 from maintaining an action to recover the compensation attributable to those activities. The agreement between the parties and the evidence demonstrates that the structure was offered for sale and the remodeling and construction was therefore not exempt under Paragraph 4. No attempt having

---

1. 1972 Ariz.Sess.Laws, ch. 167, § 5. (Subsequently amended in 1975 and 1977).

been made to apportion between the valid part of the transaction, the value of the realty less the work performed in violation of the contractor's licensing statutes, and the invalid portion, the inseparability infects the valid part, tainting it with invalidity and causing it to fail. *Miller v. Superior Court,* supra; *Neil B. McGinnis Equipment Co. v. Riggs,* 4 Ariz.App. 556, 422 P.2d 187 (1967).

Likewise, the exemption contained in Paragraph 13, supra, does not fit. That exemption, on its face, is in furtherance of the policy that property be maintained and kept in repair. The work in the instant case went far beyond maintenance and repair into construction and remodeling as even the sellers acknowledged in their agreement.

The judgment is reversed as to the $4,500 on the note and $900 attorney's fees awarded to appellees with directions to enter judgment in favor of appellants as to count one of the complaint.

RICHMOND, C. J., and HOWARD, J., concur.