656 P.2d 627

**Louis W. BARASSI and Henrietta Barassi, husband and wife, Plaintiffs/Appellees,**

v.

**James J. MATISON and Nancy J. Matison, husband and wife, Defendants/Appellants.**

No. 2 CA–CIV 3947.

Court of Appeals of Arizona, Division 2.

Sept. 14, 1982.

Rehearing Denied Nov. 10, 1982.

Review Denied Dec. 14, 1982.

D'Antonio & D'Antonio, P.C. by Patricia A. Ihnat and Gregory D. D'Antonio, Tucson, for plaintiffs/appellees.

Monroe, Wilson & Collins by Michael J. Monroe and Dale L. Williams, Tucson, for defendants/appellants.

## OPINION

HOWARD, Chief Judge.

This is an action on a note and mortgage. The trial court, after making findings of fact and conclusions of law, ordered a foreclosure and awarded appellees $116,255.29 plus interest, costs and attorney's fees. Based on the doctrine of res judicata and collateral estoppel, appellants contend appellees were not entitled to a judgment on the note. We do not agree.

The parties were previously before this court in *Matison v. Barassi,* 118 Ariz. 538, 578 P.2d 619 (1978). Briefly, the facts of that case were as follows. Barassi is an attorney; Matison is a real estate broker. Barassi was restoring property in the older part of Tucson near the community center. Matison became interested in the property that Barassi was restoring and agreed to buy it for $102,500 with a $12,500 down payment and a note and mortgage for the balance of $90,000. On March 19, 1974, the parties signed a deposit and receipt agreement which also contained an agreement by Barassi to complete the remodeling. This deposit and receipt agreement, Exhibit A, itemized the remodeling which was to be accomplished.

The property was not ready on the closing date and a month and one-half later, the remodeling still had not been completed. However, the parties agreed to close the sale anyway, but modified the method of making the down payment. Instead of a down payment of $12,500 cash, Matison paid $8,000 cash and executed a promissory note for $4,500 which was due and payable when the items in Exhibit A had been completed.

Barassi finally completed the remodeling, but Matison would not pay the $4,500 due on the note. Barassi sued to recover on this note. The trial court allowed recovery, but

we reversed on appeal for two reasons. First, the work performed by Barassi under Exhibit A placed him within the definition of a "contractor" as defined in A.R.S. § 32–1101 and Barassi, not being licensed, could not sue to recover for such work and labor. Second, "[n]o attempt having been made to apportion between the valid part of the transaction, the value of the realty less work performed in violation of the contractor's licensing statutes, and the invalid portion, the inseparability infects the valid part tainting it with invalidity and causing it to fail. [citations omitted]"

In the case at bench, when Matison failed to make payments on the $90,000 note, this action ensued. The trial court found, inter alia, that the value of the property on the date the sale was closed was the same as the purchase price, $102,500. The trial court also specifically found that after the filing of the deposit and receipt agreement, the following sums were paid by appellees: $6,224.96 for the services of unlicensed laborers; $7,273.17 for materials used in the restoration of the subject property; and $3,049.89 for the services of licensed subcontractors on the subject property, totaling $16,548.02.

Having found that all of the work done after the execution of the deposit and receipt agreement was done by licensed contractors, the trial court concluded that the $90,000 due on the note was not tainted by any illegality. It then computed the amount due by taking the sum of $90,000 and adding the accrued interest to it. We conclude that there is an amount due and owing on the note, but not the amount awarded by the trial court.

In the present case, appellants contend that the doctrines of res judicata and collateral estoppel preclude appellees from recovery on the note. Appellees assert that they could still recover the entire balance on the note because the work and labor was actually done by licensed contractors and A.R.S. § 32–1121 as amended in 1975 (in particular subparagraph 6) exempts Barassi form the licensing requirements and should govern the remodeling which was done in 1974.

Under the doctrine of res judicata an existing final judgment, rendered upon the merits without fraud of collusion by a court of competent jurisdiction, is conclusive as to every point decided and as to every point which could have been raised by the record and decided with respect to the parties thereto. *Di Orio v. City of Scottsdale,* 2 Ariz.App. 329, 408 P.2d 849 (1965). This doctrine binds the same parties standing in the same capacity in subsequent litigation on the same cause of action, not only upon facts actually litigated, but also upon those points which might have been litigated. *Di Orio v. City of Scottsdale,* supra.

The doctrine of "collateral estoppel" is a doctrine of issue preclusion. It bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action. *Ross v. International Brotherhood of Electrical Workers,* 634 F.2d 453 (9th Cir.1980); *State v. Jones,* 124 Ariz. 284, 603 P.2d 555 (App. 1979).

A judgment rendered by a court having jurisdiction of the parties and subject matter is conclusive and indisputable evidence as to all rights, questions, or facts put in issue in the same suit and actually adjudicated therein, when the same come again into controversy between the same parties or their privies. *Manor v. Stevens,* 61 Ariz. 511, 152 P.2d 133 (1944); *Taylor v. Betts,* 59 Ariz. 172, 124 P.2d 764 (1942); *Greer v. Frost,* 41 Ariz. 551, 20 P.2d 301 (1933); *Standard Accident Insurance Company v. Allen,* 38 Ariz. 173, 298 P. 406 (1931); *Mason Dry Goods Company v. Ackel,* 30 Ariz. 7, 243 P. 606 (1926); 50 C.J.S. Judgments § 712, p. 168.

If a point or question was in issue and adjudicated in a former suit, a party bound by the judgment cannot escape the estoppel by producing at a second trial new arguments or additional or different evidence in support of the proposition which was decided adversely to him. *Thomas v. Consolidation Coal Company,* 380 F.2d 69 (4th Cir.1967); *Kingsbury v. Tevco, Inc.,* 79 Cal.App.3d 314, 144 Cal.Rptr. 773 (1978);

*Tomiyasu v. Golden,* 81 Nev. 140, 400 P.2d 415 (1965); *Arthur v. Arthur,* 354 P.2d 199 (Okl.1959); *Parnacher v. Mount,* 306 P.2d 302 (Okl.1957); *Werner v. Riemer,* 255 Wis. 386, 39 N.W.2d 457 (1949). Collateral estoppel will apply as to all issues which were in an earlier case even though some factual matters and legal arguments which could have been presented were not. *Kingsbury v. Tevco, Inc.,* supra.

In *Matison v. Barassi,* supra, we decided that Barassi could not recover for work and labor incurred in the restoration of the building after the date of the deposit and receipt agreement because he was not exempted under the statutes and did not have a contractor's license. We also decided that he could not collect on the $4,500 note. However, we did not decide that Barassi could never collect anything, nor did we decide that the $90,000 note was tainted. The question of Barassi's ability to collect on the $90,000 note was never litigated nor could it have been litigated at that time. Neither the doctrine of res judicata or collateral estoppel bars recovery of *all* sums due on the $90,000 note.

However, whether one relies on res judicata or collateral estoppel, the issue of Barassi's exemption under the licensing statutes has been decided against him and cannot be relitigated. Appellees argue that in *Matison v. Barassi,* supra, they proceeded under the statute prior to its 1975 amendment, that the amendment gives an exemption to owners who contract with licensed contractors for the improvements even if the property may be intended for sale, and that the amended statute, being remedial in nature, applies at the time of trial even though the transaction may not have been originally exempt. See *American Savings Life Insurance Company v. Financial Affairs Management Co., Inc.,* 20 Ariz.App. 479, 513 P.2d 1362 (1973). This legal argument could have been presented in the action on the note and therefore the doctrine of collateral estoppel applies. See *Kingsbury v. Tevco,* supra. There can be no recovery for work and labor done after the execution of the deposit and receipt agree-

ment. Appellants claim that monies expended for work and labor *before* the date of the deposit and receipt agreement must also be deducted from the value of the property because such work was also done in violation of the contracting statutes. We do not agree. The record shows that Barassi did not originally commence the improvements with the intention of selling or renting the property. Therefore, A.R.S. § 32–1121(5), either before or after its amendment in 1975, exempted Barassi from the licensing requirements. Appellees contend, however, that the sum of $7,272.17, which represents materials used in the restoration after the signing of the deposit and receipt agreement, is recoverable because a contractor's license is only required for work and labor and not for furnishing of materials. We do not agree.

A.R.S. § 32–1153, prior to its amendment in 1981, prohibited an unlicensed contractor from maintaining "... any action in any court of the state for collection of compensation for the performance of any act for which a license is required...." A contractor as defined in A.R.S. § 32–1101, prior to its amendment in 1977 and 1981, is inter alia, a person who undertakes himself or through others to construct, alter or improve any building. A person who constructs, alters or improves any building of necessity agrees to provide the materials in connection with such work. Therefore, for the purposes of the licensing statute, the materials are not something separate and apart for which a person can recover if he does not have the required license. See *Newcomb v. Smedal,* 6 Ariz.App. 295, 432 P.2d 154 (1967).

We can now find what is due and owing on the $90,000 note. The value of the realty was $102,500. We subtract from that sum the down payment in the amount of $8,000 and the sums expended by Barassi for the restoration after March 19, 1974, $16,548.02. The amount due on the principal is $77,951.98 plus accrued interest, costs and attorney's fees. The judgment is modified to show that there was due and owing to appellees, pursuant to the terms of the

note and mortgage, $100,693.53 [1] plus interest at the rate of 10% per annum from September 1, 1980, together with court costs in the sum of $841.25 and attorney's fees in the sum of $10,000.

The judgment as modified is affirmed.

BIRDSALL, J., and JAMES C. CARRUTH, Superior Court Judge, concur.

NOTE: Judge JAMES D. HATHAWAY having recused himself in this matter, Judge JAMES C. CARRUTH was called to sit in his stead and participate in the determination of this decision.

---

1. This sum includes interest on the principal at 5% per annum from July 1, 1977 to July 1, 1978 and interest on the unpaid principal and accrued interest at the rate of 10% per annum to September 1, 1980.