IN THE

# ARIZONA COURT OF APPEALS
### DEPARTMENT ONE

SANDRA K. STARR, *Appellant*,

*v.*

ARIZONA BOARD OF FINGERPRINTING, *Appellee*.

No. 1 CA-CV 20-0432
FILED 8-5-2021

Appeal from the Superior Court in Maricopa County
No. LC2020-000050-001
The Honorable Douglas Gerlach, Judge (retired)

**AFFIRMED**

COUNSEL

Burns, Nickerson & Taylor, PLC, Phoenix
By Neal C. Taylor
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Eric Schwarz and Dena R. Benjamin
*Counsel for Defendant/Appellee*

## OPINION

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop[1] joined.

**M c M U R D I E**, Judge:

¶1        Sandra K. Starr appeals from the superior court's dismissal of her appeal from the Arizona Board of Fingerprinting's ("Board") refusal to consider whether she is eligible for a fingerprint clearance card. We affirm the superior court's dismissal and hold: (1) the Board lacks subject matter jurisdiction to review a determination by the Department of Public Safety's Fingerprinting Division ("Department") that Starr is ineligible to receive a fingerprint clearance card; and (2) Starr may seek review of the Department's criminal offense determination under Arizona's Administrative Procedure Act because the time to seek review has not begun to accrue.

### FACTS AND PROCEDURAL BACKGROUND

¶2        After being offered a promotion that required a background clearance in 2016, Starr applied to the Department for a fingerprint clearance card. The Department denied Starr's application but informed her she might be eligible to apply for a "good cause exception" with the Board, a separate body independent of the Department. The Department based its denial on Starr's felony conviction in 2002 for abandoning or endangering a child under Texas Penal Code § 22.041. The Department classified her conviction as child neglect, which made her eligible to apply to the Board for a good cause exception. A.R.S. § 41-1758.03(C)(48). Starr did not

---

[1]        Judge Lawrence F. Winthrop was a sitting member of the court when the matter was assigned to this panel. He retired effective June 30, 2021. In accordance with the authority granted by Article 6, Section 3, of the Arizona Constitution and A.R.S. § 12-145, the Chief Justice of the Arizona Supreme Court designated Judge Winthrop as a judge *pro tempore* in the Court of Appeals, Division One, for the purpose of participating in the resolution of cases assigned to the panel during his term in office.

challenge the Department's classification of her conviction, nor did she seek a good cause exception with the Board.

¶3 In 2017, Starr again applied for a fingerprint clearance card, and the Department again denied her application based on the Texas conviction. This time the Department classified the Texas conviction as child abuse, which *per se* rendered her ineligible to apply for a good cause exception. *See* A.R.S. § 41-1758.03(B)(10). Starr nevertheless applied for a good cause exception with the Board. The Board responded that she was ineligible to apply for a good cause exception based on the Department's classification of the Texas conviction as child abuse. Starr did not attempt to challenge either the Department's classification or the Board's response.

¶4 In 2019, after earning a new degree and starting a new career, Starr still needed a background clearance, so she applied a third time for a fingerprint clearance card from the Department. The Department again denied her application based on the Texas conviction, which it again classified as child abuse. Starr applied once more for a good cause exception with the Board. And the Board again informed her she was ineligible to apply for a good cause exception due to the Department's classification of her offense as child abuse.

¶5 Starr filed a judicial review action in the superior court under the Administrative Review Act, A.R.S. §§ 12-901 to -914, challenging the Board's 2019 refusal to consider her application for a good cause exception or review the Department's classification of the Texas conviction. In a final Rule 54(c) judgment, the superior court dismissed Starr's complaint, finding that it did not have jurisdiction because Starr was effectively seeking review of decisions issued in 2017, which she failed to appeal timely. Starr appealed to this court, and we have jurisdiction under A.R.S. § 12-913. *See Svendsen v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014); *see also Brumett v. MGA Home Healthcare, LLC,* 240 Ariz. 421, 431, ¶ 23 (App. 2016).

## DISCUSSION

¶6 Starr argues she was entitled to a hearing before the Board to determine whether the Department correctly classified her Texas conviction. Starr asserts the Board is more suited to determine whether the conviction is similar to child neglect or child abuse because it can consider more information than the Department. In Starr's view, the Board's authority to review the classification stems from the relevant statutes: (1) a requirement in A.R.S. § 41-1758.01(A)(4) that the Department inform every

applicant that they can apply for a good cause exception with the Board; and (2) the requirement in A.R.S. § 41-619.55(C) and (E) that individuals seeking a good cause exception demonstrate they have no offense in their records that would render them ineligible for a fingerprint clearance card. Starr concludes that without this avenue for review of the Department's classification through the Board, she is left with no meaningful due process or remedy to address the Department's asserted error.

¶7            After examining the statutory scheme, we conclude the superior court correctly dismissed Starr's appeal for lack of subject matter jurisdiction, albeit for different reasons than the court expressed.

**A.    The Board Lacked Subject Matter Jurisdiction to Review the Department's Classification of Starr's Texas Conviction under A.R.S. § 41-1758.03(B).**

¶8            We determine subject-matter jurisdiction and questions of statutory interpretation *de novo*. *Lay v. Nelson*, 246 Ariz. 173, 175, ¶ 8 (App. 2019) (subject-matter jurisdiction); *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015) (statutory interpretation). We are not bound by the superior court's legal conclusions and may affirm the court if it reached the correct result even if it did so for different reasons. *Collins v. State*, 166 Ariz. 409, 413, n.1 (App. 1990).

¶9            In reviewing the statutes governing fingerprint clearance cards, our objective is to "effectuate the legislature's intent," and the best indicator of that intent is their plain language. *SolarCity Corp. v. ADOR*, 243 Ariz. 477, 480, ¶ 8 (2018). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernible from the face of the statute." *State of Netherlands v. MD Helicopters Inc.*, 248 Ariz. 533, 538, ¶ 13 (App. 2020) (quoting *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325, ¶ 8 (2011)).

¶10            When interpreting the language of statutes, we construe the words and phrases "according to the common and approved use of the language." A.R.S. § 1-213. "Statutory terms, however, must be considered in context." *Estate of Braden*, 228 Ariz. at 325, ¶ 8. We must also construe statutory provisions "in light of their place in the statutory scheme so they may be harmonious and consistent." *State v. Flynt*, 199 Ariz. 94, ¶ 5 (App. 2000) (citation omitted) (quotations omitted). When statutes relate to the same subject matter—that is, when they are *in pari materia*—they should be "construed together . . . as though they constituted one law." *State ex rel.*

*Larson v. Farley*, 106 Ariz. 119, 122 (1970). In such situations, "legislative intent . . . must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes." *Id.*

**1. Under the Statutory Scheme Governing Fingerprint Clearance Cards, the Board Does Not Have Authority to Review the Department's Classification of Offenses.**

¶11        In Arizona, for many designated occupations or professions, an individual who seeks employment must acquire a fingerprint clearance card. *See* A.R.S. § 41-1758.01(A)(1) (listing the statutes requiring fingerprint background checks and fingerprint clearance cards). There are two types of fingerprint clearance cards: (1) standard fingerprint clearance cards, A.R.S. § 41-1758.03; and (2) "level 1" fingerprint clearance cards, A.R.S. § 41-1758.07. Two distinct, independent entities are vested with the statutory authority over the administration and issuance of fingerprint clearance cards: the Department and the Board. *See* A.R.S. § 41-1758.01 (establishing the fingerprinting division within the Department of Public Safety); A.R.S. § 41-619.52(A) (establishing the Board).

**i. The Department's Statutory Duties**

¶12        The Department's relevant duties are outlined in A.R.S. §§ 41-1758 to -1758.08. Under these statutes, the Department is responsible for determining an applicant's eligibility for either type of fingerprint clearance card and issuing it.

¶13        An individual seeking a fingerprint clearance card must provide a completed application along with fingerprints and a fee to the Department, which then conducts a state and federal criminal history records check. A.R.S. § 41-1758.02. Upon receiving the individual's criminal history records, the Department compares the individual's arrest records to two lists of criminal offenses. A.R.S. § 41-1758.03(B), (C); *see also* A.R.S. § 41-1758.07(B), (C) (same for level 1 fingerprint clearance card). The Department must also consider whether any out-of-state offenses contained in the arrest records are "the same or similar" to those listed in subsections B and C of A.R.S. §§ 41-1758.03 and -1758.07. Based on the results of these comparisons, the Department must make one of four decisions.

¶14        First, if the Department finds the individual is not "awaiting trial" and has not "been convicted of committing or attempting, soliciting, facilitating or conspiring to commit" any of the offenses on either list, the Department must issue the person a fingerprint clearance card. A.R.S.

§§ 41-1758.03(A), -1758.07(A). Second, if the Department finds an offense that is the same or similar to one listed in subsection B of A.R.S. §§ 41-1758.03 or -1758.07, the Department must deny the application and the individual "is precluded from receiving a [fingerprint clearance card]." *See also* A.R.S. § 41-1758.04(A). Third, if the Department finds an offense that matches any listed in subsection C of A.R.S. §§ 41-1758.03 or -1758.07, it must deny the application, but the individual "may petition the [Board] for a good cause exception." *See also* A.R.S. § 41-1758.04(A).

**¶15**　　　　Finally, if the Department cannot determine within 30 business days whether an offense meets the criteria of subsections B or C, the Department cannot issue the individual a fingerprint clearance card, but the individual may petition the Board for a good cause exception. A.R.S. §§ 41-1758.03(L), -1758.07(L); *see also* A.R.S. § 41-1758.04(A).

**¶16**　　　　Whenever the Department determines it cannot issue a fingerprint clearance card, it must inform the individual of "the criminal history information on which the denial was based." A.R.S. § 41-1758.01(A)(5). Likewise, if the Department does not issue a card, it must inform the individual "of the right to petition the [Board] for a good cause exception pursuant to [A.R.S. §§] 41-1758.03, 41-1758.04, or 41-1758.07." A.R.S. § 41-1758.01(A)(4).

### ii. The Board's Statutory Duties

**¶17**　　　　The Board is composed of six members appointed by the heads of five agencies and the chief justice of the Arizona Supreme Court, and its duties are specified in A.R.S. §§ 41–619.51 to -619.57 and Arizona Administrative Code ("A.A.C.") R13-11-102 to -114. The Board is responsible for deciding whether individuals should receive a fingerprint clearance card despite having committed any of the disqualifying offenses identified by the Department under subsections C and L of A.R.S. §§ 41-1758.03 and -1758.07—otherwise known as granting a "good cause exception." A.R.S. § 41-619.53(A)(1); A.R.S. § 41-619.51(5).

**¶18**　　　　An individual seeking a good cause exception must apply with the Board within one year of the Department's decision to deny a fingerprint clearance card. A.A.C. R13-11-104(A). Once an application is received, the Board must conduct an "expedited review" to determine whether the applicant should be granted a good cause exception without a hearing. A.R.S. § 41-619.55(A). If an applicant fails to qualify for a good cause exception under the expedited review but is nevertheless qualified to seek a good cause exception, the Board must hold a hearing on the matter.

A.R.S. § 41-619.55(B). Under either scenario, the Board must consider whether the applicant has shown that they are not "awaiting trial on or [have] not been convicted of committing" any of the offenses listed in subsection B of A.R.S. §§ 41-1758.03 and -1758.07. A.R.S. § 41-619.55(C), (E).

¶19      In deciding whether to grant a good cause exception, the Board must consider whether the applicant has "successfully rehabilitated and is not a recidivist" regarding an offense in their criminal record. *Id.* In doing so, the Board must also consider six non-exhaustive factors addressing the nature and circumstances of the offense and the extent of the applicant's rehabilitation. A.R.S. § 41-619.55(C), (E)(1)–(6).

### iii. The Board and Department's Obligations Are Limited and Defined by the Statutes.

¶20      Once the Board grants a good cause exception, it must make a written request to the Department to issue the applicant a fingerprint clearance card. A.R.S. § 41-619.55(F). If the Board makes a request, the Department must issue the fingerprint clearance card unless a new precluding offense is identified in the interim. A.R.S. §§ 41-1758.03(E), (G)(2), -1758.07(E), (G)(2).

¶21      Interpreting the statutory powers of the Department and the Board outlined above as one body of law, *Larson*, 106 Ariz. at 122, we conclude the Board does not have the authority to review or overrule the Department's classification of offenses. Instead, the Department and the Board exercise complementary but ultimately independent functions within the process for issuing fingerprint clearance cards.

¶22      The Department is tasked with determining an individual's threshold eligibility for a fingerprint clearance card by classifying the offenses listed in their arrest records under the categories provided by A.R.S. §§ 41-1758.03 and -1758.07. Because these statutes expressly identify which crimes allow an individual to "petition the [Board] for a good cause exception" and which do not, the Department has exclusive authority to decide whether an individual qualifies to seek a good cause exception. *See* A.R.S. §§ 41-1758.03(B)–(C), (L), -1758.07(B)–(C), (L).

¶23      On the other hand, the Board's sole responsibility concerning fingerprint clearance cards is to "determine good cause exceptions." A.R.S. §§ 41-619.53(A)(1), -619.55(A). Once the Department concludes that an individual may seek a good cause exception under subsections C or L of A.R.S. §§ 41-1758.03 or -1758.07, the Board has exclusive authority to decide whether a fingerprint clearance card should be issued.

¶24 Given that the express and only purpose of the Board in the process is to determine good cause exceptions, there is simply no indication that the legislature intended the Board to sit as an appellate body reviewing decisions by the Department. Critically, nothing in the statutes or administrative regulations defining the Board's powers and obligations authorize the Board to hear a challenge to the Department's classification of an offense or overrule such a classification. Absent an express provision permitting the Board to review the Department's exercise of its authority under A.R.S. §§ 41-1758.03 and -1758.07, we decline to interpret the Board's authority over good cause exceptions to include the power to do so. *Cf. State Tax Comm'n v. Miami Copper Co.*, 74 Ariz. 234, 237 (1952) ("[T]he right of appeal exists solely by virtue of express constitutional or statutory provision. In other words, an appeal is a privilege granted by the constitution or statute and in the absence of an express provision granting the right, none exists."); *see also Knape v. Brown*, 86 Ariz. 158, 159 (1959).

### 2. Starr's Reliance on A.R.S. §§ 41-1758.01(A)(4) and -619.55(C) and (E) is Misplaced.

¶25 Starr nevertheless asserts that several provisions of the statutes governing the Board and the Department implicitly vest the Board with the power to review and override the Department's classification of offenses. Starr first points to A.R.S. § 41-1758.01(A)(4), which requires the Department to inform every person who applies for and is denied a fingerprint clearance card of the right to petition the Board for a good cause exception. Starr also identifies subsections C and E of A.R.S. § 41-619.55, which require the Board to consider whether an applicant has shown that their criminal history contains no offense that would render them ineligible for a good cause exception. Starr concludes that these provisions authorize the Board to (1) consider her petition for a good cause exception despite the Department's classification of her Texas conviction as child abuse under subsection B of A.R.S. § 41-1758.03; (2) decide the Department incorrectly classified the offense; and (3) grant a good cause exception and order the Department to issue her a fingerprint clearance card. We address each of these positions in turn.

¶26 As Starr asserts, A.R.S. § 41-1758.01(A)(4) requires the Department to inform "each person who submits fingerprints . . . of the right to petition the [Board] for a good cause exception." But the fact that the Department must inform every applicant that the law allows a petitioner to seek a good cause exception does not grant every applicant the right to file such a petition. Indeed, Starr's argument ignores the rest of the provision, which expressly limits the referenced right to seek a good cause

exception as "pursuant to" A.R.S. §§ 41-1758.03, -1758.04, and -1758.07. Thus, A.R.S. § 41-1758.01(A)(4) cannot be read to extend the right to seek a good cause exception beyond the circumstances specified in those statutes or to alter the division between offenses that permit an individual to seek a good cause exception and those that do not.

¶27 Starr's reliance on A.R.S. § 41-619.55(C) and (E) is also misplaced. Although these provisions require the Board to consider whether an applicant has shown that his or her criminal history does not contain a disqualifying offense under subsection B of A.R.S. §§ 41-1758.03 and -1758.07, they are expressly confined to the Board's good-cause-exception analysis. They do not authorize the Board to review the Department's classification of offenses.

¶28 Instead, the cited provisions apply only to offenses that the Department has not already classified. Thus, for example, when the Department cannot classify an offense, the applicant may apply to the Board for a good cause exception. A.R.S. §§ 41-1758.03(L), -1758.07(L). In that limited circumstance, A.R.S. § 41-619.55(C) and (E) permit the Board to decide whether the applicant has committed a disqualifying offense under §§ 41-1758.03(B) or -1758.07(B). They also allow the Board to address any crimes that the Department's investigation may have inadvertently omitted or any new charges the applicant may have incurred in the period between the Department's determination and the Board's review. Thus, interpreting subsections C and E of A.R.S. § 41-619.55 in this manner aligns it with the express purpose of the Board—to determine good cause exceptions—and harmonizes them with the Department's authority under A.R.S. §§ 41-1758.03 and -1758.07. *See Larson*, 106 Ariz. at 122.

¶29 Starr's argument—that the Board has broad power to classify any offense listed in an applicant's criminal record—disregards the primary distinction the statutes draw between the consequences of a prior offense listed in subsection (B) of §§ 41-1758.03 or -1758.07 and one listed in subsection (C) of the same statutes. Under §§ 41-1758.03(B) and -1758.07(B), an applicant who has committed a listed offense "is precluded from receiving a fingerprint clearance card pursuant to this section." By contrast, when an applicant has committed an offense listed in (C), the applicant "is precluded from receiving a fingerprint clearance card, *except that the person may petition the [Board] for a good cause exception pursuant to § 41-619.55.*" (Emphasis added.) In other words, §§ 41-1758.03(B) and -1758.07(B) provide no exceptions: an applicant with a prior offense listed in subsection (B) is absolutely precluded from receiving a fingerprint clearance card. An applicant with an offense listed in (C) is also "precluded," but in such a

case, the statute specifies that the applicant may petition the Board for a good cause exception. A.R.S. §§ 41-1758.03(C) and -1758.07(C). In short, if the legislature had intended to permit an applicant with an offense the Department has classified under subsection (B) to petition the Board for a good cause exception under § 41-619.55, it would have said so. Starr's interpretation of A.R.S. §§ 41-1758.01(A)(4) and -619.55(C) and (E) would render meaningless the explicit textual distinctions made in A.R.S. §§ 41-1758.03 and -1758.07 between those offenses that allow a petition to the Board for a good cause exception and those that do not, a result we must avoid. *See Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, 178, ¶ 141 (App. 2004) (courts must avoid interpretation of statutes that renders a term meaningless). Accordingly, the Board cannot review or overturn the Department's classification of offenses under A.R.S. §§ 41-1758.03 and -1758.07.

3. **Because the Board Lacked Jurisdiction to Review the Department's Classification of Starr's Prior Conviction, the Court Lacked Jurisdiction to Consider the Appeal.**

¶30 Based on this interpretation of the statutory scheme governing fingerprint clearance cards, we now turn to its application to this case. The Department determined that Starr's Texas conviction was similar to a crime listed in A.R.S. § 41-1758.03(B). As a result, Starr was precluded from receiving a standard fingerprint clearance card and could not petition for a good cause exception from the Board. *Compare* A.R.S. § 41-1758.03(B) *with* A.R.S. § 41-1758.03(C). Because the Board lacked authority to review or override a decision by the Department, Starr's appeal to the superior court asked the court for relief it had no power to grant.

¶31 The superior court's jurisdiction to review an administrative agency decision derives from that of the agency from which the appealed decision arises. *See Berry v. Ariz. State Land Dep't.*, 133 Ariz. 325, 326 (1982) ("If the administrative agency has no jurisdiction to consider a question, the appellate court has none."). Thus, because the Board did not have the power to review the Department's decision to classify Starr's offense under A.R.S. § 41-1758.03(B), the superior court had no jurisdiction to hear her appeal and correctly dismissed it, albeit for different reasons.

¶32 Although the superior court characterized its decision to dismiss Starr's appeal from the 2019 decision from the Board based on her failure to appeal the 2017 decision as a matter of appellate jurisdiction, its analysis was more akin to an application of issue preclusion, which "bars a

party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action." *Barassi v. Matison*, 134 Ariz. 338, 340 (App. 1982). Issue preclusion, however, has limited relevance to the statutory scheme governing the Board, which contemplates a continuing inquiry that may be relitigated as an individual takes steps towards successfully rehabilitating and reducing the possibility of recidivism. *See* A.R.S. § 41-619.55(C), (E); *see also Olesen v. Daniel*, 251 Ariz. 25, 29, ¶ 23 (App. 2021) (a subsequent claim is not precluded when "the statute explicitly invites the offending parent to present evidence of a change in circumstances").

**B.      The Department's Offense Classification under A.R.S. §§ 41-1758.03 and -1758.07 is Subject to Review Under Arizona's Administrative Procedure Act.**

**¶33**      Because the Board lacks jurisdiction to review the Department's classifications of offenses, we must address Starr's final contention that such a result leaves her without any means to remedy the Department's allegedly erroneous classification of her Texas conviction under A.R.S. § 41-1758.03(B).

**¶34**      We agree with Starr that the Department's authority to issue or deny fingerprint clearance cards based on its classification of an individual's criminal history must be subject to timely and effective review as a matter of procedural due process under the Fourteenth Amendment of the United States Constitution. Our supreme court has repeatedly held "one may not be excluded by state action from a business, profession or occupation in a manner or for reasons which contravene the due process clause of the [Fourteenth Amendment]." *Application of Levine*, 97 Ariz. 88, 91 (1964). Although acquiring a fingerprint clearance card does not "entitle a person to employment," A.R.S. §§ 41-1758.03(P), -1758.07(R), the Department's decision to deny a fingerprint card guarantees exclusion from employment with numerous occupations and professions within Arizona. *See* A.R.S. § 41-1758.01(A)(1). Due process, therefore, requires that those denied a fingerprint clearance card by the Department be provided "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Wassef v. Ariz. State Bd. of Dental Examiners ex rel. Hugunin*, 242 Ariz. 90, 93, ¶ 13 (App. 2017) (summary suspension of license satisfies procedural due process so long as "the licensee subsequently receives a prompt and adequate opportunity to be heard").

¶35　　　　To assist us in addressing this issue, we ordered the parties to provide supplemental briefing identifying what existing procedures allow an individual in Starr's position to challenge the Department's offense classification under A.R.S. §§ 41-1758.03 and -1758.07. Accordingly, after reviewing the parties' supplemental briefs, we conclude that an individual aggrieved by the Department's classification may seek review according to the uniform administrative hearing procedures ("Uniform Procedures") provided by Arizona's Administrative Procedure Act ("Act"), A.R.S. §§ 41-1092 to -1092.12.

¶36　　　　For all agencies not specifically exempt from its provisions, the Act establishes the process by which an individual may obtain review of appealable agency action, meaning an "action that determines the legal rights, duties or privileges of a party." A.R.S. §§ 41-1092(3), -1092.02(A). Under the Uniform Procedures, an agency that makes an appealable action must serve the affected party with notice. The notice must identify the statute or rule on which the action was based, the factual basis underlying the action, and a description of the party's right to challenge the action and request a settlement conference. A.R.S. § 41-1092.03(A)(1)–(4). After the notice is served, the aggrieved party is entitled to: (1) file a "notice of appeal or request for a hearing" with the agency; (2) engage in informal settlement discussions with the agency; (3) participate in a formal hearing where the party has the right to "respond and present evidence and argument on all relevant issues" before an administrative law judge; (4) receive a final administrative decision with a written explanation of the reasons supporting it; and (5) appeal an adverse decision to the superior court. A.R.S. §§ 41-1092.03 to -1092.08.

¶37　　　　The Uniform Procedures apply to the Department's classification of offenses under A.R.S. §§ 41-1758.03 and -1758.07 and provide the required review of the Department's actions. Although the Board is exempt from the Uniform Procedures, A.R.S. § 41-1092.02(A)(14), the Department is not. Therefore, the Department's classifications are appealable agency actions, as they constitute substantive determinations of individuals' right to obtain a fingerprint clearance card and, consequently, to seek employment in numerous fields. And because the Board lacks jurisdiction to review the Department's decisions, there is no specific statutory scheme for reviewing the Department's classifications which could supplant the Uniform Procedures.

¶38　　　　The only remaining question is whether Starr is now precluded from seeking review of the Department's classification of her Texas conviction. Under A.R.S. § 41-1092.03(B), a party who wishes to

challenge an appealable agency action must file a notice of appeal or request for a hearing "within thirty days after receiving the notice prescribed in subsection A of [A.R.S. § 41-1092.03]." There is no evidence in the record that Starr sought to challenge the Department's classification of her Texas conviction by seeking a hearing from the Department. However, the time limit to challenge the Department's decision begins to run only after a compliant denial notice is sent per A.R.S. § 41-1092.03(A). The denial letters the Department sent Starr did not comply with the statute.

¶39        To be sure, the notices met some of the prerequisites of A.R.S. § 41-1092.03(A). For example, they sufficiently identified the statutory and factual basis underlying the Department's decisions to deny Starr's fingerprint clearance card. A.R.S. § 41-1092.03(A)(1)–(2). But critically, the notices did not include "a description of the party's right to request a hearing on the appealable agency action" according to the Uniform Procedures, A.R.S. § 41-1092.03(A)(3). Thus, Starr never received "the notice prescribed in subsection A" of A.R.S. § 41-1092.03(A)(3), and as a result, her 30-day period to file a challenge under A.R.S. § 41-1092.03(B) never began to run.[2]

## ATTORNEY'S FEES AND COSTS

¶40        Starr requests an award of attorney's fees and costs under A.R.S. § 12-348(A)(2). Because she is not the prevailing party against the Board, we deny her request.

---

[2]        Starr also argues that the superior court should have acquired the complete record from the Board under A.R.S § 12-904 before ruling, and without it, she was denied a meaningful appeal. We need not address this issue, however, because even assuming it was error for the court to issue a decision without a complete record from the Board, the record had no bearing on the dispositive legal question here—whether the Board had jurisdiction to grant the relief Starr sought. Thus, any error was harmless. Ariz. Const. art. 6, § 27; *Sundown Imports, Inc. v. Ariz. Dep't. of Transp.*, *Motor Vehicle Div.*, 115 Ariz. 428, 433 (App. 1977).

## CONCLUSION

¶41      We affirm the superior court's dismissal of Starr's appeal.



AMY M. WOOD • Clerk of the Court
FILED:    AA